Carroll,
April 5, 1910.

### DAVIS, *Adm'r*, v. BOSTON & MAINE RAILROAD.

An exclamation made at the time of a railroad collision by a person present is not admissible in evidence to prove the cause of the accident, unless it appears that the utterance was the immediate result of the unusual and exciting occurrence, and that the declarant was in a position to know the truth of the matter to which his statement related.

A witness who has knowledge of material facts may be examined for the purpose of showing an attempted suppression of his testimony; and the question how far counsel may properly pursue such an inquiry is one determinable by the trial court.

The opinion of a witness in respect to a matter with which he is shown to be familiar is admissible in evidence, if it appears to the trial court that such testimony will promote the discovery of the truth.

In the absence of contrary evidence, it is to be assumed that improper remarks of counsel were disregarded by the jury, in conformity with the specific instructions of the court.

CASE, for negligently causing the death of the plaintiff's intestate. Trial by jury and verdict for the defendants. Transferred from the June term, 1908, of the superior court by *Chamberlin*, J., on the plaintiff's exceptions to the admission and exclusion of evidence and to remarks of counsel interjected during the progress of the trial.

*Walter D. H. Hill* and *Niles & Upton* (*Mr. Upton* orally), for the plaintiff.

*Leslie P. Snow* (by brief and orally), for the defendants.

YOUNG, J. 1. The plaintiff's intestate got drunk, drove his horse upon a grade crossing, and was killed by the defendants' engine. The engineer saw him before the accident, but the speed of the train was not materially checked until after he was killed. One issue submitted to the jury was why the speed was not checked, the plaintiff contending that it was due to the failure of the engineer to apply the brakes, and the defendants, to the failure of the brakes to hold the train. The train did not stop as soon after the accident as the express messenger expected it to, and he exclaimed " Why don't they put on the brakes ? " The plaintiff offered this exclamation in evidence, and the court excluded it, subject to exception.

If there is no view of the law in which the exclamation was admissible to prove that the brakes were not applied until after the accident,— the purpose for which it was offered,— it can serve no useful purpose to consider why it was excluded. The plaintiff concedes that it was hearsay for the purpose for which he desired to use it, but contends that it was admissible as a part of the *res gestæ* (*Murray* v. *Railroad*, 72 N. H. 32, 34), or as a " spontaneous exclamation." 3 Wig. Ev., s. 1745 To bring it within this exception to the rule which excludes hearsay, there must be evidence from which it can be found that (1) the accident — an unusual and exciting occurrence — produced it (*Murray* v. *Railroad*, 72 N. H. 32 ; *Robinson* v. *Stahl*, 74 N. H. 310), and (2) when the messenger made it he was in a position to know that the brakes had not been applied — the truth in respect to its subject-matter. 3 Wig. Ev., s. 1751. If, therefore, there is no evidence from which it can be found that the messenger, when he made the exclamation, was in a position to know, not whether the speed of the train had been materially checked, but whether the brakes had been applied, it does not come within this exception. The only evidence relevant to that issue is the messenger's testimony and that of an expert called by the plaintiff.

The messenger did not say that he knew the brakes had not been applied, or that he could tell when an emergency application was made, but that he could tell when such an application checked the speed of the train suddenly enough to throw him forward ; and when asked if such an application was not always noticeable to one in his position, he replied in the negative. If the rails were wet, as they were on the day of the accident, and the brakes locked the

drive-wheels, the engine might slide and the application not be noticeable to one in the front end of the train; and that the engine might slide under these circumstances is the fair inference from the expert's testimony, for he told what should be done when the brakes failed to hold the train. Notwithstanding it can be found from this evidence that the messenger could tell when an emergency application which held the train was made, it has no tendency to prove that he was in a position to know when one which failed to hold it was made. In other words, it can be found that the messenger was in a position to know that the speed of the train was not materially checked before the accident, which was conceded. The question in issue was why the speed was not checked; whether it was because the engineer failed to apply the brakes, or because the brakes failed to hold the train. As to that issue, it cannot be found that the messenger was in a position to know the truth of the matter.

2. The deceased's father, the sole beneficiary under the statute, was called as a witness by the defendants. He was not in court while the plaintiff was putting in his case. Subject to exception, the defendants were permitted to ask him if the plaintiff called him as a witness on the first trial, if the plaintiff summoned him to attend this trial, if he knew why he was not called at this time, and if he was kept informed as to how the trial was progressing. The testimony of the witness as to his son's condition and whereabouts on the day of the accident was material, and the evidence excepted to was relevant to the issue of whether the plaintiff was attempting to suppress his testimony. The court may permit one party to an action to show that the other is trying to suppress material testimony, and it rests with the trial court to decide how far counsel should be permitted to go into the matter.

3. After the fireman had testified in detail as to what he and the engineer did to stop the train, the defendants were permitted, subject to exception, to ask him if he knew of anything either could have done which was not done to prevent the accident. It would have been competent for the plaintiff to show such a failure on the part of either of these men; consequently it was competent for the defendants to negative it. If the plaintiff's contention, that the question called for an expression of the opinion of the witness and not the statement of a fact within his knowledge, were sound, the result for which he contends would not necessarily follow. In this state the opinion of a witness " concerning matters of daily occurrence and open to common observation " (*Hardy* v. *Merrill*, 56 N. H. 227, 241) is admissible if the court finds it will promote the discovery of the truth. *Folsom* v. *Railroad*, 68 N. H. 454, 461; *Pattee* v. *Whitcomb*, 72 N. H. 249. In other words, the test of

admissibility for opinion evidence, as well as for most other evidence, is to inquire whether it will aid the triers. 3 Wig. Ev., ss. 1917–1923. Consequently, the opinion of a witness in respect to a matter with which he is shown to be familiar is usually admitted if the court finds that his knowledge is superior to that of the triers. *Folsom* v. *Railroad*, 68 N. H. 454, 461.

4. If the remarks excepted to were improper the verdict would not be set aside, for the jury was instructed to disregard them; and it will be assumed, in the absence of evidence, that it did as it was told.

*Exceptions overruled.*

All concurred.