(No. 6304.   December 21, 1936.)

R. A. DEDMAN, Appellant, v. OREGON SHORT LINE
RAILROAD COMPANY and FRED McATEE, Respondents.

[63 Pac. (2d) 667.]

Errol H. Hillman and Anderson, Bowen & Anderson, for Appellant.

Geo. H. Smith and H. B. Thompson, for Respondents.

GIVENS, C. J.—Appellant and his wife sued respondents for damages for injuries received from falling under and being dragged or pushed ɒy one of the trains of respondent railroad company at a highway crossing at Drummond. Mr. and Mrs. Dedman were joint plaintiffs in the action for her injuries. Dedman sued alone for his injuries. The cases were consolidated for trial and the jury returned verdicts against appellant and his wife and for respondents. The husband's case alone was appealed.

Two grounds of negligence were alleged in the complaint: First, that the respondent railroad company had negligently piled the snow at the crossing on the highway to an excessive depth, and that when the train in question came by, it caused the snow to give way and appellants to slip and slide under the train. The other ground was that respondent engineer was negligent in not more quickly stopping the train.

■ Appellant's first assignment of error is the trial court's action in overruling the following objection:

"Mr. ANDERSON: We object as incompetent, irrelevant and immaterial, calling for a conclusion of the witness, and invading the province of the jury."
to this question:

"Q. Was there anything that you know of you could have done with the engine, with the appliances at hand and under the circumstances, which you did not do, to stop it quicker?"
relying on these authorities to support his contention that the question called for an opinion on the ultimate question the jury was called upon to decide. (*Springfield Consol. Ry. Co. v. Welsch,* 155 Ill. 511, 40 N. E. 1034; *Brugge-*

man v. *Illinois Central Ry. Co.*, 147 Iowa, 187, 123 N. W. 1007, Ann. Cas. 1912B, 876; *Springfield Consol. Ry. Co. v. Puntenney*, 200 Ill. 9, 65 N. E. 442; *Nosler v. Chicago, B. & Q. Ry. Co.*, 73 Iowa, 268, 34 N. W. 850.) Other cases were cited but therein the questions asked were so different as not to be in point. For instance in *Fogel v. San Francisco & S. M. Ry. Co.*, 110 Cal. xvii, 5 Cal. Unrep. 194, 42 Pac. 565, and *Jeffries v. Seaboard A. L. R. Co.*, 129 N. C. 236, 39 S. E. 836, the question was "anything done to save the child"; *Louisville & N. R. Co. v. Landers,* 135 Ala. 504, 33 So. 482, involved delay injuring cattle. While the limited authorities above mentioned do support appellant with regard to this particular question, the better reasoned rule supported by authority is to the effect that the engineer of the locomotive involved in the alleged accident, that is the actor, the individual charged with negligence may testify as to whether he knew of anything else he could have done to stop quicker, such testimony being admissible on the ground that it calls for a statement of fact from the operator thereof with regard to the use of an instrumentality calling for skilled knowledge and is not a matter of general information, and though the ruling is in appellant's favor in *Ingwersen v. Carr & Brannon*, 180 Iowa, 988, 164 N. W. 217 at 226, the reasoning supports the admissibility of such evidence. (See, also, *Davis v. Boston & M. R. R.*, 75 N. H. 467, 76 Atl. 170; *Paquette v. Connecticut Valley Lumber Co.*, 79 N. H. 288, 109 Atl. 836; *Morrison v. Boston & M. R. R.*, 86 N. H. 176, 164 Atl. 553 at 556; *Champlin v. Pawcatuck Valley St. Ry. Co.*, 33 R. I. 572, 82 Atl. 481; *Merrihew v. Goodspeed,* 102 Vt. 206, 147 Atl. 346, 66 A. L. R. 1109; *Garvey v. Ladd,* (Mo. App.) 266 S. W. 727 at 732.)

Appellant calls attention to the rule at 1117 et seq., 66 A. L. R., when, however, those cases are carefully examined it will be found that where the question is confined to the stopping of the car or engine by the operator thereof, most of the authorities tend to support the admissibility of this evidence.

Appellant next assigns as error the action of the trial court in overruling the following objection to the testi-

mony of the witness Barnes, called as an experienced engineer by respondents:

"Q. What, according to your experience, would you be able to do if when you were in that position you were looking backward from the cab and saw a person and had occasion to stop the train, what would you do to the train, and how long would it take you?

"Mr. ANDERSON: We object to that as incompetent, irrelevant and immaterial; speculative, and calling for a conclusion of the witness, and it is invading the province of the jury."

To get a proper perspective of this question and the objection and answer it is necessary to review somewhat in detail previous testimony given by witnesses of both respondents and appellant. In appellant's case in chief he called as a witness one Walter F. Dillon who was questioned as to his qualifications as an engineer and an air-brake expert, and who testified with regard to stopping a train somewhat similar to the one involved herein and under like circumstances as follows:

"Q. And from your study of air brakes and cars and engines, and from your experience with air brakes, would you state that you can give a reasonably accurate estimate of the distances a train could be stopped in?

"A. I would have to ask a few questions as I went along.

"Q. Well, perhaps I don't make myself very clear. I will withdraw that question, and ask it this way: From your experience, Mr. Dillon, and your study, do you consider that you can give a fairly accurate estimate of the distance that would be required of a certain train at a certain speed to stop?

"A. Yes, sir.

"Q. Now, we will assume, Mr. Dillon, that an engine, I think of the fifteen hundred class, the 1570, I believe is the number of the engine was,—and attached to that engine was a caboose,—a baggage car and coach; and assuming that the engine and cars were equipped with Westinghouse air brakes, that the brakes were in good working order, and the engine would start on a track slightly curving to the left, and from

a standing start,—curving to the right, pardon me,—the track curving to the right and the engineer would start up that engine, there being snow on the ground but no particular amount on the rails, with perhaps a light snow falling at the time,—the engineer would start that engine and two cars and attain a speed of between four and five miles per hour, now in what distance in your opinion could that train be brought to a stop with an emergency application of the air brake and the application of sand?"

After various objections and remarks were interpolated the material parts of witness' testimony were as follows:

"A. If the engine was still working steam at the time it would take a distance approximately twenty-six to thirty feet to stop. If the engine was not working steam at the time he tried to stop, or started to stop, it would take a shorter distance, for this reason,—May I give the reason?

"Q. Yes; you may.

"A. For this reason, when he reaches over and shuts the throttle off the ports and pipes are full of steam, and an engine will make one revolution, and assuming the wheels to be five feet in diameter, it would be a little over fifteen feet the engine would travel with steam helping it along, in addition to the down grade. If the throttle was shut off and the steam was out of the ports and pipes, it would reduce the distance from thirty-five to fifty per cent in which the stop would be made. I don't know the conditions or anything."

"Q. Then what would be your best judgment as to the distance that engine and cars would move at between five and six miles an hour,—in what distance could it stop?

"A. Taking the statement that I made about the steam, I would say from twenty-six to twenty-eight,—well, with the down grade, possibly thirty feet. I wouldn't take into consideration the little down grade.

"Q. Now, is this what you mean, Mr. Dillon: If the steam was shut off before the brakes were applied, then the shorter distance would apply?

"A. If the drivers at that time would make one revolution the steam would be exhausted,—that would be fifteen

feet, but you would have the impetus of the steam in the cylinders and pipes for the first fifteen feet of the twenty-six to thirty feet.''

''Q. When and where did you last have occasion yourself to stop an engine, if at all, to stop an engine under the conditions that Mr. Bowen assumed in his question to you?

''A. Well, while I was on the Great Northern and Northern Pacific, when I would work on an engine in the shops, and I did work over practically every division of both of those roads, my duties called for me going out on the engine and testing it out myself and handling it. In that case,— in those cases I always handled the engine myself, stopping and starting on various trains, some passenger and some freight. Usually about every third day I would make a trip, round trip with some locomotive over the division on which it was working.''

''Q. If you have four or five or six cars, passenger cars, attached to an engine going at five or six miles an hour, you can stop much more quickly than with two, can't you?

''A. I can't answer that question without being misleading. If the coaches are broke to the percentage they are supposed to be, it will stop with more cars quicker than it will with fewer cars, because they are broke with a higher percentage.''

''Q. Then every second of time that elapsed you would go 9.76 feet? Is that right?

''A. Every second that elapsed?

''Q. You would go what,—yes.

''A. It would be just short of twelve feet in a second, 11.86.

''Q. Now, if you,—you are assuming, are you not, that if you were moving eight miles per hour on a dry rail and a level track, you would consume that distance in a second, aren't you?

''A. Yes sir.

''Q. Yes. And you are not assuming that a wet rail and a one per cent down grade would affect the situation?

''A. Yes, sir; every bit of down grade will change it. I am figuring on approximately level track.

"Q. You have assumed approximately level track for your purposes?

"A. Yes, sir.

"Q. And you have assumed the rail to be sufficiently dry to not affect the braking effect?

"A. Not slide the wheels."

From the testimony of this witness it is apparent that time can be translated into distance and *vice versa*. The error complained of with regard to witness Barnes was that it detailed how long it would take to do certain specific, segregated and enumerated acts all leading up to and necessary to stop the train, which invaded the province of the jury. McAtee, the engineer of the train in question had testified as to the total length of time which would elapse in reaching for the throttle and brake valve, and the distance traveled in that length of time. Dillon stated as his conclusion that the train should have been stopped in 26 or 30 feet at a speed of four or five miles per hour and the engine working steam, but it was stopped in some 80 odd feet. What had to be done to stop the train was clearly a matter for someone who was skilled as an engineer or in the operation of engines to state. There was a sharp conflict between McAtee and Barnes on the one hand and Dillon on the other as to whether the train could be stopped quicker by putting it in reverse, leaving the throttle open and applying the brakes, or by applying the brakes and shutting the throttle. The form of the question propounded to Barnes was improper but the answer elicited was not prejudicial because if the distinction be made between the time Barnes could have done these things and the time a reasonably skilled man under the same circumstances could have done them, the distinction would be of little moment because the witness would have to arrive at his conclusion from observation of others, his own experience, or mathematical calculations, and it is apparent that all of the witnesses were talking about the same subject matter. Barnes divided the different actions up into their time elements, Dillon gave a composite picture of completed acts in terms of time and distance. The

testimony of all these parties was not prejudicial. (52 C. J. 366, sec. 1946, and 52 C. J. 432, sec. 2013.)

Appellant urges that the court erroneously instructed in Instruction No. 11, that Mr. Dedman was responsible for or bound by the contributory negligence of his wife. Instruction No. 11 read as follows:

"No. 11.

"You are instructed, gentlemen of the jury, that if you find that the plaintiffs of their own accord passed from the limits of the traveled road as it was then maintained by public authorities and needlessly stood beyond such limits, either for the purpose of boarding the train or any other purpose, and that in so doing they negligently subjected themselves to danger and such act either caused or contributed to their falling under the train, then you must render a verdict against the plaintiffs and in favor of the defendants, unless you shall further find that defendant's engineer was guilty of negligence under the doctrine of last clear chance, as hereinafter defined, and under that principle, could, in the exercise of ordinary care, have avoided injuring the plaintiffs, but failed to do so."

It will be noted that this instruction was in the plural and did not make the one bound by the other and is not subject to the construction placed on it or criticisms made by appellant. With regard to this instruction and instruction No. 12, appellant also contends that the court did not properly instruct that contributory negligence to defeat appellant's cause of action would have to be the proximate cause. Instruction No. 20 instructed the jury to consider all of the instructions together as a whole and with regard to the proposition that contributory negligence would have to be the contributing factor, the court fully instructed on this point as follows:

"No. 7.

. . . . . . . . . . . . .

"The burden of establishing contributory negligence by a preponderance of the evidence rests upon the defendants. This burden may be discharged but never shifted. You are

instructed that the burden is upon the defendants under their charge of contributory negligence to prove not only that the plaintiff was negligent, *but that such negligence of the plaintiff contributed to and had a causal connection with the injury complained of.*

"If, however, contributory negligence appears on the plaintiff's side of the case and from the plaintiff's witnesses, whether the same appears by direct examination or under cross examination, and from such testimony you find that there was contributory negligence in this case, as this term is hereinafter defined for you, then and in that event you are instructed that you should consider such defense even though no testimony was offered affirmatively by the defendant in the proof thereof.

"In this connection you are further instructed that contributory negligence means: *Negligence as in these instructions defined, on the part of the plaintiff, which helped* to cause or bring about the injury complained of.'' (Emphasis herein.)

"No. 8. .

"It is a general rule of law in this state that in an action to recover damages for personal injuries where contributory negligence is pleaded as a defense, the plaintiff cannot recover when it appears from the evidence either of the plaintiff or defendant *that the negligence of the plaintiff was a proximate cause of the injury* notwithstanding the fact that the evidence may also show negligence on the part of the defendant.

"The rule above in a broader sense means that to prevent a recovery by reason of contributory negligence, the person injured must have been guilty of a want of ordinary care, *and that such want of care was a proximate cause of the injury.* The negligence or want of care, however, of the injured person need not be the sole proximate cause, for that would exclude all negligence on the part of the defendant, and there would be no room for the application of the rule of contributory negligence.'' (Emphasis herein.)

"No. 9.

"Although the defendant's negligence may have been the primary · cause of the injury complained of, yet an action

for such injury cannot be maintained *if the proximate and immediate cause of the injury can be traced to the want of ordinary care and caution in the person injured.* This rule is subject to this qualification, viz.: That the contributory negligence of the party injured will not defeat the action if it be shown that the defendant might by the exercise of reasonable care and prudence have avoided the consequences of the injured party's negligence.

"So, in this case, if you find from all the evidence, facts and circumstances in the case that the engineer saw the plaintiffs at the time they were .falling toward or under the train, and said engineer could by the exercise of reasonable care and prudence have stopped the train sooner than he did, and if you further find that the plaintiffs were injured by reason of the engineer not stopping said train sooner, then it would be your duty to find for plaintiffs.'' (Emphasis herein.)

"No. 12.

"The doctrine of last clear chance, as applied to the issues of this case, is based upon the principle that the defendants could, with the means at hand, in the exercise of ordinary care, have avoided injuring the plaintiffs after actually discovering their peril, but failed to do so, but are not liable otherwise.

"Under this principle or doctrine, if you find from the evidence that the plaintiffs were standing at the crossing not because their path was blocked by the train but for other purposes and in a dangerous position and but for which they would not have fallen upon the track or under the train, then the only duty devolving upon either of the defendants was for the engineer to act as promptly as a reasonably careful and prudent man would have done with the appliances at hand and under the conditions surrounding him in an attempt to stop the train after discovering that the plaintiffs or either of them had fallen, *and if you believe from the evidence that want of ordinary care of the plaintiffs in any material degree caused or contributed to their falling* on the track or alongside the cars, and that the engineer, as soon as he discovered their peril acted as

promptly and effectively, and as a reasonably careful and prudent man would have acted under the circumstances and with the appliances at hand and under the conditions surrounding him, you must render a verdict against the plaintiffs and in favor of the defendants.'' (Emphasis herein.)

The last assignment of error is to the effect that the court erroneously instructed the jury verbally and that the substance of the instruction so verbally given was erroneous in that it required that any verdict given should be against both defendants. The record disclosing the situation complained of is as follows:

''The COURT: Mr. Anderson, Mr. Thompson inquired as to whether or not the instructions covered the question as to whether or not if a verdict were returned against the defendants that it must be returned against both defendants? That is correct, is it?

''Mr. THOMPSON: That is correct.

''The COURT: Let me see if I can say the same thing again. I told the jury that it could return a verdict against the railroad company alone, if it found that the injuries were caused by the condition at the crossing. If, however, the verdict were based upon the actions of Mr. McAtee, the engineer, under the doctrine of the last clear chance, the verdict would have to be against,—or should be against both defendants.

''Mr. ANDERSON: Well, I don't know about requesting instructions verbally that way, but apparently that is what Mr. Thompson has done. I would like for the Court to tell the jury that the verdict may be against one or both defendants on either theory, and I think that is the law. The liability is joint and several.

''The COURT: I will consider that. You understood the last statement I made, gentlemen?

''JURORS: Yes.''

Nothing further appears.

Referring to the written instructions which respondent at least indicates were the ones involved, Instruction No. 9 was quoted above. It will be noticed that the second paragraph of this instruction referred to the stopping of the

train by the engineer but did not limit the finding of the jury to a verdict against him, merely said that the jury should find for plaintiffs.

In Instruction No. 10 the middle paragraph authorized the jury to find for the defendants although in one clause the singular "defendant" is used. The last paragraph in this instruction would seem to limit recovery against defendant railway company alone, therefore while the court asked the jury if it understood his last statement, it is not clear whether the court meant by this statement merely an amplification or clarification of the written instructions already given or whether he intended thereby to give an additional statement of law. The record does not disclose what ruling or action of the court was objected or excepted to or will be deemed objected or excepted to, presenting an error for this court to review.

The judgment is therefore affirmed. Costs to respondents.

Budge, J., concurs.

AILSHIE, J., Specially Concurring.—In view of the different positions which appear to be maintained by members of the court on the questions involved in this case, I think it proper that I briefly state the reasons for my concurrence in affirming the judgment.

. The appellant presents seven specifications of error which may well be grouped under four headings:

1. Alleged error of the court in permitting defendant McAtee to testify, as to whether he knew of anything he could have done, with the engine and appliances at hand, more than he did do, to prevent the accident.

2. Permitting defendant to ask the witness Barnes what he would have done, under the circumstances, to stop the train, and how long it would have taken him to do so.

3. The alleged giving of an oral instruction to the jury.

4. The giving of instruction stating the conditions under which contributory negligence would prevent recovery.

These topics are all considered in the opinion of the Chief Justice and I shall, therefore, refer to them only in so far

as necessary to illustrate my position and state my own views on the different questions.

It must be admitted that there is division of authority on both the questions here presented, on admissibility of evidence. It seems to me, however, that good reason exists for allowing more latitude to a defendant, or the party whose negligence, it is claimed, caused the accident, than should be allowed a stranger or bystander, in regard to giving testimony as to what he would have done under the same circumstances. The cases cited by the Chief Justice and Justice Morgan illustrate the diversity of holdings.

The defendant or actor has already been placed in the emergency and has acted. He saw the situation and experienced the circumstances surrounding it. He is now charged with lack of due care and prudence in his action. After he has related the conditions and situation under which he was bound to, and did, act, there can certainly be no harm or prejudice done to anyone, by allowing him to state, whether he knew of anything else that he could have done to avoid the accident. If he does not know of anything else, and the plaintiff thinks *he* knows of something, he can very well cross-examine him and bring out that fact.

On the other hand, it is quite a different thing to allow a bystander, a stranger, or even an expert answering hypothetically, to testify that he (the witness) would have acted so and so, and within what time he could have acted. The test is not, what the bystander or stranger would, or could, have done, under the same or similar circumstances, but rather, what a reasonably prudent man would do under like circumstances.

It was proper and, I think, necessary to have someone skilled and experienced as a locomotive engineer, to testify as to the time it would require for a competent and reasonably careful and prudent engineer to perform the several acts necessary to stop the train in the shortest possible time. Clearly a jury of laymen, unfamiliar with locomotives, would not know how long it would take, nor would they know the different things necessary to be done in stopping the train; nor would they know, with any degree of cer-

tainty, the effect of grades, number of cars in train, condition of track as affected by rain, snow or ice, and many other things that might materially affect the stopping of the train, and the length of time in which it could be done. It is, therefore, necessary, in most of this class of cases, to have the testimony of someone skilled and experienced in operating trains and locomotives. Its purpose, however, is not served and might often be defeated, by merely asking the witness how he would do the thing and how long it would take him to go through the various movements. He might be especially expert, skilled and apt at the work or he might be the reverse of some or all of these qualifications.

I am led to the conclusion that the court erred in permitting the witness Barnes to answer the question, as stated in the opinion of the Chief Justice, and that such a line of examination should not be permitted of a third party or stranger to the case.

An examination of the cases, cited by appellant on this issue, will disclose that many of them are cases where the objection to the question was sustained, and the contention was made on appeal that the court erred in not allowing the answer. On appeal the various courts, from which these cases come, held that the ruling of the court was not erroneous. For illustration of the cases above referred to, cited by appellant, where objections were sustained, see *Nosler v. Chicago, B & Q. Ry. Co.*, 73 Iowa, 268, 34 N. W. 850, *Fogel v. San Francisco & S. M. Ry. Co.*, 5 Cal. Unrep. 194, 42 Pac. 565, and *Gavisk v. Pacific R. Co.*, 49 Mo. 274. These rulings, however, are not necessarily the equivalent of holding, that it would have been prejudicial error to allow the question to be answered.

In some of the cases cited the question was put in such form as to demonstrate on its face, that a witness could not properly answer it. Such was the case of *Bruggeman v. Illinois Cent. R. Co.*, 147 Iowa, 187, 123 N. W. 1007, Ann. Cas. 1912B, 876, where the question asked was:

"Q. Could it have been stopped by any human agency in any quicker time on that particular day than it was stopped then?"

Objection was overruled and the ruling was held erroneous.

On the other hand, I do not think the action of the court in this case was prejudicial to the plaintiff's rights, for the reason that the answer, and the cross-examination following it, showed his answer to be chiefly speculation and guess work on the part of the witness. The answer to the question was as follows:

"A. Well, you are looking back, you are watching an object, and you,—in this position you are away from your throttle, and you have got to turn around and grab the throttle, and your throttle and brake valve are on the same side, and you have to shut off your throttle and go to emergency with your brake valve. It would take four or five seconds before you could possibly get the,—get to the brake valve. Then after you get to the valve, the brake valve, it takes about two or three seconds before you would get the brakes applied."

This answer comprised the entire testimony of the witness in response to the objectionable question. This was immediately succeeded by the following cross-examination:

"Q. Suppose the engineer didn't shut off the throttle, how much difference would that make?

"A. That would make considerable difference.

"Q. How much difference?

"A. I don't know.

"Q. You, as an expert, don't know that?

"A. I am not an expert.

"Q. Oh, you are not an expert?

"A. No, sir.

"Q. Then why are you testifying how long it takes to do this, if you are not an expert?

"A. Because you can't tell with it working steam as to how quick you can stop the engine.

"Q. Then your answer is the purest sort of a guess, isn't it?

"A. No, sir.

"Q. What is it, then?

"A. I know, by actual experience.

"Q. You know by actual experience what?

"A. Yes, sir.

"Q. What?

"A. How soon I can stop a train.

"Q. Suppose you didn't shut off the throttle, how soon could you stop?

"A. It depends on the grade and snow.

"Q. At the grade you have been testifying about, and the snow you have been testifying about?

"A. Conditions vary.

"Q. Well, you have been testifying about the grade up there at Drummond, haven't you?

"A. Yes, sir.

"Q. All right. You are on the grade at Drummond, now, and you don't shut off the throttle, how long will it take?

"A. Well, I couldn't say as to how long it would take."

Clearly the foregoing testimony could not have prejudiced any substantial right of the plaintiffs, and the judgment should not be reversed on the grounds of the improper allowance of the answer to the question propounded by defendants' counsel.

On the subject of giving an oral instruction to the jury, I find nothing in the record which would constitute an error or amount to an adverse ruling. The record of everything that occurred in this connection is set forth in the opinion of the Chief Justice and, as I read and understand it, the trial court did not pretend to give any oral instruction but rather repeated from memory the substance of a written instruction already given. Counsel for appellant appears to have acquiesced in the request, that the judge tell the jury whether they might return their verdict against *one or both defendants;* except that he contended that the verdict might be returned *"against one or both defendants on either theory,"* which had been stated by the court. I find nothing in this record that could be termed an erroneous ruling or be prejudicial to appellant.

Referring to the instruction (No. 11) quoted in the opinion of the Chief Justice, it seems to me that, if read and

accepted literally, it is more favorable to appellant than he was entitled to have given to the jury. It should be noted that, when referring to the *plaintiffs,* it is at all times in the plural and requires that the contributory negligence, necessary to defeat a recovery, must be the negligence of *plaintiffs* and not merely one of the plaintiffs. It reads in substance:

"You are instructed, Gentlemen of the Jury, that if you find that the plaintiffs of their own accord passed from the limits of the traveled road . . . . and . . . . they negligently subjected themselves to danger . . . . then you must render a verdict against the plaintiffs and in favor of the defendants, unless . . . . , " etc.

Now, it will be seen, that this instruction, as given to the jury, required them to find that both plaintiffs had been guilty of contributory negligence, in order to constitute a defense on that ground. Whereas, in fact, the contributory negligence of the husband alone would have been sufficient to defeat his right of recovery.

It is true that in some other instructions the "plaintiff" is referred to in the singular, but in those instructions the court is discussing abstract questions of law, dealing with the general subject of negligence and contributory negligence, proximate cause, due diligence, etc.; but Instruction No. 11 is the only one dealing specifically with the question as to the character, manner and extent of contributory negligence and the circumstances under which it must occur, in order to defeat a recovery on that ground. I am, therefore, forced to the conclusion that Instruction No. 11 stated the law more favorably to plaintiffs than they were entitled to have it given, and was not prejudicial to their rights.

I concur in an affirmance of the judgment on the specific grounds and for the reasons herein stated.

Budge, J., concurs.

MORGAN, J., Dissenting.—The authorities are not in accord on the question of the right to ask a witness, familiar with what was done, as to whether anything else could have been done to avoid an accident. Supporting the theory that

such a question propounded to the engineer, who was operating the engine which pulled the train that injured plaintiff and who was one of the defendants in this action, counsel for respondents cite the following cases which are in point: *Davis v. Boston & M. R. R.*, 75 N. H. 467, 76 Atl. 170, wherein it is said:

"After the fireman had testified in detail as to what he and the engineer did to stop the train, the defendants were permitted, subject to exception, to ask him if he knew of anything either could have done which was not done to prevent the accident. It would have been competent for the plaintiff to show such a failure on the part of either of these men; consequently it was competent for the defendants to negative it. If the plaintiff's contention, that the question called for an expression of the opinion of the witness, and not the statement of a fact within his knowledge, were sound, the result for which he contends would not necessarily follow. In this state the opinion of a witness 'concerning matters of daily occurrence and open to common observation' is admissible if the court finds it will promote the discovery of the truth. . . . . In other words, the test of admissibility for opinion evidence, as well as for most other evidence, is to inquire whether it will aid the triors. . . . . Consequently, the opinion of a witness in respect to a matter with which he is shown to be familiar is usually admitted, if the court finds that his knowledge is superior to that of the triors."

*Champlin v. Pawcatuck Valley St. Ry. Co.*, 33 R. I. 572, 82 Atl. 481, wherein the court said, without assigning any reason for saying it:

"(6) The fifth exception is to the admission by the court of questions Nos. 13 and 14 and the answers thereto in the deposition of the witness William Adams, as found on page 86 of the transcript of testimony: '13 Q. Could Mr. Champlin have passed the automobile, which was coming towards him, in any other way than he did?' '14 Q. Could he have got away from the track, or pulled away from the track, any sooner than he did?' These questions were read from the deposition of the witness taken before the trial to be

used at the trial. No objection was made to either before the magistrate. The questions were properly admitted.

"(7) The sixth exception is to the admission by the court of question No. 16 and the answer thereto in the deposition of the witness William Adams, as found on page 87 of the transcript of testimony: '16 Q. Was there room at that place, where he met the automobile, for an automobile and a team to pass in the traveled part of the road?' The question was proper.

"(11) The tenth exception is to the admission by the court of questions Nos. 91 and 92 and the answers thereto of the plaintiff George E. Champlin, as found on pages 115 and 116 of the transcript of testimony: '91 Q. Was there anything you can think of you could have done to have got out of the way faster than you did?' 'Q. 92. Was there anything you could have done there that you didn't do to get out of the way sooner than you did?' The questions were properly admitted."

*Merrihew v. Goodspeed*, 102 Vt. 206, 147 Atl. 346, 66 A. L. R. 1109, wherein the following is to be found:

"(1) On the direct examination of the defendant by his own counsel he was asked: 'Do you know of anything you could have done that you did not do to avoid hitting this child?' Subject to exception by plaintiff, he answered: 'I know of nothing I could have done.' "

Commenting on this testimony the court said:

"The testimony was proper and material upon the defendant's theory of the case. It was not the expression of an opinion upon the question whether the proper degree of care had been exercised. It was not a matter of speculation, and it was material to know what the defendant did, and what, if anything, he left undone, regarding the management and operation of his automobile."

With respect to like testimony, by another witness who was riding with the defendant, the court said:

"What we have said in considering the previous exception to the defendant's testimony is applicable also. Error does not appear."

Respondents also cite *Smith v. Galveston-Houston Elec. Ry. Co.,* (Tex. Com. App.) 277 S. W. 103, which does not appear to be in point. The also cite *Hayhurst v. Boyd Hospital,* 43 Ida. 661, 254 Pac. 528, in support of the theory that "permitting an expert to give an ultimate expression of opinion as to the result that can be obtained under given circumstances is not a usurpation or invasion of the province of the jury."

Let us put out of consideration the right to prove by an expert witness his opinion on the matter with respect to which the jury must render its verdict, as not decisive of the question under consideration, and confine our investigation to respondents' right to have the defendant engineer answer the question: "Was there anything that you know of you could have done with the engine, with the appliances at hand and under the circumstances, which you did not do, to stop it quicker?" Also to have the witness Barnes, a locomotive engineer, produced as a witness on behalf of respondents, answer the question: "What, according to *your* experience, would *you* be able to do if when *you* were in that position *you* were looking backward from the cab and saw a person and had occasion to stop the train, what would *you* do to the train, and how long would it take *you?*" (Emphasis ours.)

The weight of authority is against the theory that such testimony is admissible, as shown by the following cases cited by appellant: *Springfield Consol. Ry. v. Welsch,* 155 Ill. 511, 40 N. E. 1034, wherein the following is found:

"Again, it is urged that the trial court erred in refusing to permit appellant to ask the motorman the question: 'Well, tell the jury whether or not you used all the means and all the power you had to stop the car and prevent it running over him.' Such ruling was not erroneous, for the question was suggestive. Moreover, the witness stated, in answer to other questions, exactly what he did. Whether or not all he did was all he could have done was for the jury to determine, and not a matter upon which the witness might express his opinion."

In *Springfield Consol. Ry. Co. v. Puntenney*, 200 Ill. 9, 65 N. E. 442, the following appears:

"After the motorman, as a witness for the railway company, had given his version of the accident, and had stated what he did to avoid it, counsel for said company asked him, 'Do you know of anything you could have done, that you did not do, to avoid that collision there? The court sustained plaintiff's objection, and counsel excepted. It is apparent that whether the witness could have done more than he did to avoid the accident was a question for the jury, and not for the witness, to decide. In other words, it was not proper for the witness to state that he omitted no act of care or caution to avoid the injury. True, the form of the question was somewhat less objectionable on this ground, inasmuch as it was whether he knew of anything he could have done, and not whether he could have done anything he did not do. But its purpose was the same, and it would have merely elicited the opinion that the witness, acting for the company, did all that he could have done to prevent the collision."

The opinion further shows the witness had already testified to the facts from which he had been asked to draw a conclusion.

*Bruggeman v. Illinois Cent. R. Co.*, 147 Iowa, 187, 123 N. W. 1007, Ann. Cas. 1912B, 876, contains the following:

"The engineer of the train was a witness for the defendant, and questions were propounded to him which were objected to as shown. Rulings of the court are also given, as well as the answers of the witness: 'Q. Taking this train as you was operating that day, applied and constructed as it was, on the track at Toeterville, where you were then running and operating this train, could you have stopped this train by any possibility in any shorter distance than the train was in fact stopped? (Plaintiff objects as calling for a conclusion of the witness. Objection overruled. Plaintiff excepts.) A. No, sir; I could not. Q. Could it have been stopped by any human agency in any quicker time on that particular day than it was stopped then? (Plaintiff objects as calling for a conclusion.) Q. In your opinion?

(Objection overruled. Plaintiff excepts.) A. No, sir.' As these questions called for the very matters which the jury was to determine, rather than answers to hypothetical questions, *or as to the time in which such a train might have been stopped,* the court was in error in overruling the objections. . . . . ''

In *Jeffries v. Seaboard A. L. R. Co.*, 129 N. C. 236, 39 S. E. 836, it is said:

"The next exception is that the following question to the engineer was ruled out on plaintiff's objection: 'After you saw the child, was anything not done that could have been done to save the child?' This, if a proper matter of proof, was to ask the witness to answer a question that the jury were to pass upon. This has been fully discussed by Cook, J., in *Raynor v. Wilmington Railroad Co.*, 129 N. C. 195, (at this term) 39 S. E. 821, and needs no further citation of authority."

In the Raynor case the decision was on the question of admissibility of testimony as to whether more force was used than necessary in expelling a passenger from a railroad train. The opinion on that point is reflected in the third section of the syllabus, as follows:

"In an action by a passenger for wrongful ejection from a train, a question whether any more force was used than was necessary was properly excluded as calling for an opinion."

The Supreme Court of Alabama, in *Taylor v. Lewis*, 206 Ala. 338, 89 So. 581, approved a ruling sustaining an objection to this question:

"I will ask you this question: Could you have stopped the car any earlier than you did; could that car have been stopped any quicker than it was by you at that time?"

The court observed:

"It calls for conclusions that should be drawn by the jury from facts given by the witness. The witness should tell what he did, give the jury all the facts, so they could decide whether he could have 'stopped any quicker' or 'any earlier' the car 'than it was by him.' It is true that conclusions are frequently collective facts that a witness

can give, express an opinion on, when known to him. When the facts can be given, without an opinion, it should be done, and let the jury draw the inferences. In *Birmingham R. & E. Co. v. Jackson*, 136 Ala. 279, 34 So. 994, the court said:

" 'The testimony of Ayers that the motorman was "doing all he could to stop" was illegal.' "

In *Nosler v. Chicago, B. & Q. Ry. Co.*, 73 Iowa, 268, 34 N. W. 850, the following is found:

"The engineer testified that he was about 200 feet from the crossing when he saw the team approaching the crossing, and he said: 'Very frequently they come within ten or fifteen feet, and then stop. I was not doing anything towards stopping the engine. When they got about ten or fifteen feet from the railroad, I saw they were not going to stop, so I gave the alarm-signal with the whistle. Think the whistle was open till the horses were struck. I set the air-brake with one hand, and, after I let go the whistle with the other hand, I reversed the engine about the time I struck the team. Am not sure about giving steam in the back motion. I did all there was time to do.' Thereupon he was asked by counsel for the defendant to state 'whether or not you did everything you could, from the time you discovered the team was likely to be struck until it was struck.' An objection to this question was properly sustained, for the reason it asked for the opinion of the witness; and, besides this, he had just stated all he did, and in fact answered the question. The court, therefore, did not err in overruling the question asked."

The Supreme Court of Colorado, in *Denver & R. G. R. Co. v. Vitello*, 34 Colo. 50, 81 Pac. 766, said:

"The court erred in permitting answers to the following question: 'Who was responsible for the proper securing of the train upon a grade?' This question was objectionable for two reasons: First. It was the very matter to be determined by the jury, and was therefore an invasion of its province. Questions which call for the opinion of a witness upon the ultimate fact to be tried by the jury are improper. . . . . If it were permissible to call witnesses for the pur-

pose of answering the question which is submitted to the jury, then trials by law would soon become farcical, because each of the parties litigant could call to the stand their friends and partisans, and inquire of them what the verdict of the jury should be. This question is objectionable for another reason. It is calling for the opinion of a witness upon a matter which is not a proper subject for expert testimony, and in the same connection we may say that the trial court erred in permitting witnesses to testify as to what they would have done under like circumstances had they been in charge or control of the train, or had they been the conductor.''

The Supreme Court of California, in *Fogel v. San Francisco & S. M. Ry. Co.*, 5 Cal. Unrep. 194, 42 Pac. 565, said:

''William Craven was a witness for defendant, and testified that he was an oiler on the electric road of the defendant, his business being to oil the switches and curves; that it was his duty to examine the switches, and see that they were in good order, and that on the day the accident occurred he examined the switch where plaintiff was hurt at about a quarter past 6 in the morning and again about 11 o'clock; and that on both of these occasions it was in good order. He was then asked the following questions: 'Mr. Craven, was anything omitted that could have been done, that a man of foresight could have advised, or were you as careful as a man could have been to have avoided an accident, on this day?' 'Well, now, in your opinion as a railroad man, used to working on railroads, was everything done that could have been done in the matter to obviate or prevent this accident?' Both questions were objected to by plaintiff upon the ground that they were immaterial, irrelevant, and incompetent, and the objections were sustained. The rulings of the court were correct; both questions call for the opinion of the witness upon a matter of fact, which was the principal question at issue, and which it was the sole province of the jury to decide.''

The question propounded to the witness Barnes as to what he would have done in order to stop the train, and particularly as to how long it would take him to do it, is

not a subject for expert testimony. When a jury has been told what is necessary to be done in order to stop a train it knows as well as anyone can know how long it ought to take to do these necessary acts. It is a matter of common knowledge that some men act more quickly than others in doing things which it is their every day duty to do. It follows that the length of time which should be consumed in shutting off the steam, putting the engine in reverse, applying the brakes, and any other acts testified to and described as being necessary in order to make a quick stop are as well within the knowledge of one man as another. However, *the distance a train will travel, under given circumstances, during and after the performance of the acts intended to stop it, is not a matter of common knowledge.* That is a proper subject for expert testimony.

The Supreme Court of the United States, in *Milwaukee & St. Paul Ry. Co. v. Kellogg,* 94 U. S. 469, 24 L. ed. 256, said:

''A second exception taken in the court below, and here insisted upon, is that the court refused to permit the defendants to prove by witnesses who were experts, experienced in the business of fire insurance, and accustomed by their profession to estimating and calculating the hazard and exposures to fire from one building to another, and to fixing rates of insurance, that, owing to the distance between the elevator and the mill, and the distance between the elevator and the lumber piles, the elevator would not be considered as an exposure to the mill or lumber and would not be considered in fixing a rate thereon, or in measuring the hazard of mill or lumber.

''This exception is quite unsustainable. The subject of proposed inquiry was a matter of common observation, upon which the lay or uneducated mind is capable of forming a judgment. In regard to such matters, experts are not permitted to state their conclusions. In questions of science their opinions are received, for in such questions scientific men have superior knowledge, and generally think alike. Not so in matters of common knowledge. Thus, it has been held that an expert cannot be asked whether the time dur-

ing which a railroad train stopped was sufficient to enable the passengers to get off. . . . . ''

In *Gavisk v. Pacific Railroad Co.*, 49 Mo. 274, it is said: ''While the conductor was upon the stand, after having testified to his experience upon railroads, he was asked to 'state whether or not, if James Gavisk had, at the time of the cars striking, been holding on to the brakes and exercising ordinary care and prudence in his own protection and preservation, he would have been thrown from the cars.' This question was objected to and ruled out, and properly so. The only pretext for its admission would be upon the ground that he was an expert. An expert is supposed to have some special knowledge over and above men of ordinary education, derived from his peculiar pursuits or experience, that entitles his opinion to be received in evidence. But 'when this experience is of such a nature that it may be presumed to be within the common experience of all men of common education moving in the ordinary walks of life, there is no room for the evidence of opinion; it is for the jury to draw the inference.' . . . . To have permitted this question would have been to take the case from the jury and submit it to the witness, and there was no fact involved in it that required peculiar or professional knowledge.''

The Supreme Court of Nebraska, in *Read v. Valley Land & Cattle Co.*, 66 Neb. 423, 92 N. W. 622, quoted from the Supreme Court of Ohio in *Railroad Co. v. Schultz*, 43 Ohio, 270, 1 N. E. 324, 54 Am. Rep. 805, with respect to the rules governing the admissibility of the opinions of witnesses as evidence, as follows:

'' '(1) That witnesses shall testify to facts and not opinions is the general rule. (2) Exceptions to this rule have been found to be, in some cases, necessary to the due administration of justice. (3) Witnesses shown to be learned, skilled, or experienced in a particular art, science, trade, or business may, in a proper case, give their opinions upon a given state of facts. This exception is limited to experts. (4) In matters more within the common observation and experience of men, nonexperts may, in cases where it is not

practicable to place before the jury all the primary facts upon which they are founded, state their opinions from such facts, where such opinions involve conclusions material to the subject of inquiry. (5) In such cases the witnesses are required, so far as may be, to state the primary facts which support their opinions. (6) Where it is practicable to place palpably before the jury the facts supporting their opinions, the witnesses should be restricted in their testimony to such facts, and the jurors left to form their opinions from these facts, unaided by the mere opinions of the witnesses. (7) As the warrant for the admission of the opinions of witnesses as evidence is found in some exception to the general and very salutary rule, which requires that only facts be stated to the jury, it is the duty of a reviewing court to see that the admission of mere opinions as evidence was within some one of the established exceptions to such general rule; and where it does not appear upon the whole record but that the jury was equally capable with the witnesses of forming an opinion from the facts stated, it is error to admit in evidence the opinion of witnesses.' "

I am agreed with that part of the opinion of Chief Justice Givens wherein it is said "What had to be done to stop the train was clearly a matter for someone who was skilled as an engineer or in the operation of engines to state." That part of the testimony, however, is not what is complained of. Appellant complains of respondent, McAtee, after he had stated everything he did to stop the train, being asked and permitted to answer the question: "Was there anything that you know of you could have done with the engine, with the appliances at hand and under the circumstances, which you did not do, to stop it quicker?" Appellant further complains of the testimony of Barnes,— not that he was permitted to state what had to be done to stop the train, but "What, according to your experience, would you be able to do if when you were in that position you were looking backward from the cab and saw a person and had occasion to stop the train, what would you do to the train, and how long would it take you?" That ques-

tion called for an answer which was entirely irrelevant and immaterial.

In his concurring opinion, Mr. Justice Ailshie attempts to distinguish between decisions where objections to questions as to what the witness would have done, or whether anything else could have been done, to avoid the accident, have been sustained and the rulings have been assigned as error, from cases where objections to like questions have been overruled and the admission of the evidence has been assigned as error. A distinction does not exist. The ground of objection to such testimony is that it is irrelevant and immaterial. It is irrelevant and immaterial regardless of the ruling made on objection to the question by means of which it was sought to be elicited. The fact that in a great many cases trial judges have ruled correctly and excluded such testimony cannot be successfully urged against the soundness of the doctrine by which it should always be excluded.

If I correctly understand the theory of Mr. Justice Ailshie, it is that a ruling to the effect that such testimony is inadmissible is not the equivalent of holding it would have been prejudicial error to admit it. He says: ''An examination of the cases, cited by appellant on this issue, will disclose that many of them are cases where the objection to the question was sustained, and the contention was made on appeal that the court erred in not allowing the answer. On appeal the various courts, from which these cases come, held that the ruling of the court was not erroneous. . . . . These rulings, however, are not necessarily the equivalent of holding, that it would have been prejudicial error to allow the question to be answered.'' I am neither able to follow that reasoning nor reach that conclusion.

The theory that the error in the admission of the testimony of the witness Barnes, as to what he would have done to stop the train and how long it would have taken him to do it, was harmless, because his answer to the question propounded to him whereby that testimony was elicited was shown by his cross-examination to have been ''chiefly speculation and guesswork,'' is unsound. The trial judge ruled

that the question as to what Barnes would have done to stop the train and how long it would take him to do it should be answered, and the jury must have inferred from the ruling that the testimony was relevant and material and competent to establish a fact in issue. Furthermore, he was a locomotive engineer and knew whereof he spoke. Even if the testimony of this witness had been based on "speculation and guesswork," the jury cannot be presumed to have known it should have been excluded. There is certainly nothing to show it was not considered and acted upon in reaching the verdict. The witness was produced by respondents and testified to what they apparently expected him to. The purpose of his testimony was to defeat appellant's cause of action, and we have no right to assume it did not tend to do so.

In considering Instruction No. 11 we must not lose sight of the fact that two actions were being tried together; one by the husband and wife for damages resulting from injuries to her, the other by the husband for damages resulting from injuries to him. Only the action commenced by the husband, alone, has been appealed, and the question presented with respect to Instruction No. 11 is whether or not it correctly states the law of contributory negligence as applied to that case. For convenience it will be repeated here:

"You are instructed, gentlemen of the jury, that if you find that the plaintiffs of their own accord passed from the limits of the traveled road as it was then maintained by public authorities and needlessly stood beyond such limits, either for the purpose of boarding the train or any other purpose, and that in so doing they negligently subjected themselves to danger and such act either caused or contributed to their falling under the train, then you must render a verdict against the plaintiffs and in favor of the defendants, unless you shall further find that defendant's engineer was guilty of negligence under the doctrine of last clear chance, as hereinafter defined, and under that principle, could, in the exercise of ordinary care, have avoided injuring the plaintiffs, but failed to do so."

In view of the fact that the two cases were tried together the jury should have been instructed with respect to the law applicable to them separately, in all instances where it did not apply to them jointly. There was evidence sufficient, if believed by the jury, to have justified a finding that appellant and his wife stood at the crossing of the wagon road and railroad while the train was going by; that the wife negligently went too close to the edge of the snow embankment which caved off and caused her to fall and slide toward the moving train, placing her in a position of great danger of serious injury and death, and that her husband, appellant in this case, entirely free from negligence, in attempting to save her, fell against the train and was seriously injured.

The instruction is not free from uncertainty as to the meaning of the judge. Did he mean to tell the jury that if the wife was guilty of negligence which contributed to bringing about the accident and resultant injury, the husband's cause of action would thereby be defeated? If that is what the instruction means it is erroneous. If it is not what it means, the language employed is insufficient to clearly state what was meant. The parties litigant were entitled to have the jury correctly and clearly instructed on this important feature of the case, and this instruction is, to say the least, very uncertain and misleading.

The judgment should be reversed and a new trial granted.

Holden, J., concurs in this dissenting opinion.