421 P.2d 740

Monte Wayne MEYER by Ann Meyer, his
Guardian Ad Litem, Plain-
tiff-Appellant,

v.

Thomas J. BROWN and Jerry Mayberry,
Defendants-Respondents.

No. 9683.

Supreme Court of Idaho.

Dec. 22, 1966.

Gigray, Boyd & Downen, Caldwell, for appellants.

Elam, Burke, Jeppesen & Evans, Boise, for respondent.

TAYLOR, Justice.

October 17, 1961, between 9:30 and 10:00 a. m., plaintiff (appellant) Monte Meyer, a fourteen-year-old boy, was riding as a passenger in an automobile owned and driven by his father. Plaintiff's mother, Ann Meyer (guardian ad litem) was also a passenger in the automobile. The father and mother were parties to an action pending in the district court in Caldwell, and were on their way to attend the trial, set to commence at 10:00 a. m. They wanted to visit with their attorney before court convened and were in a hurry.

They were proceeding east on the Parma-Caldwell highway, also known as U.S. Highway 20–26. The paved portion of the highway was 42 feet wide, with wide graveled shoulders and had an intermittent white line painted along the center. On the south side of, and parallel with, the highway was located a beet dump which extended west to east approximately 1000 feet. The entrance to the dump was on the west end of the beet dump area. As the Meyer car approached the area of the beet dump it came up behind a station wagon being driven by Nola Yekel, a neighbor of the Meyers, accompanied by one Lydia Jurries as a passenger. The Yekel car and the Meyer car had just passed a beet truck which had turned into the beet dump entrance. Ahead of the Yekel car was an empty beet truck owned by defendant (respondent) Brown and driven by defendant (respondent) Mayberry. Mrs. Yekel had intended to pass the Brown beet truck; but when she observed its left rear signal light blinking she slowed the speed of her automobile and proceeded to follow the slow-moving beet truck. About 1056 feet east from the entrance to the beet dump, and in the direction in which the vehicles were traveling, was a lane leading from the north side of the highway north to the Earl Ross farm; and 50 feet farther east was another lane leading north from the highway. These lanes were connected to the traveled portion of the highway by a grade, crossing the borrow pit on the north of the highway.

The driver of the beet truck was intending to turn left across the north side of the highway to enter the lane leading to the Earl Ross farm. Meyer had been traveling at a speed variously estimated at from 70 to 90 miles per hour. When he came up behind the Yekel car he turned to the left onto the north side of the highway to pass, and had about passed the Yekel car when he observed that the truck had started to make its left-hand turn in front of him. He then applied his brakes. The braking action pulled the car to the left, as it proceeded diagonally across the north lane and into the borrow pit. The car left 118 feet of skid marks on the pavement. It catapulted over the grade leading to the Ross lane and crashed rear end first into the embankment or grade of the second lane, a distance of 114 feet from where it left the pavement.

Plaintiff and his mother were thrown from the car and plaintiff was found pinned under the left front wheel. The squealing from the skidding tires attracted the attention of workmen at the beet dump, who came over and assisted in lifting the car off the plaintiff, while his mother and another dragged him from beneath it. Although there was some conflict in the testimony, the weight of the evidence is that defendant's truck had not passed over the center line of the highway and that the north side or westbound lane was unoccupied at the time of the accident.

This action was brought by plaintiff, through his mother as guardian ad litem, to recover damages for the injuries he suffered as a result of the accident. He alleged negligence on the part of Mayberry, the driver of the truck, in attempting to

make a left turn across the highway without first observing whether such move could be made safely.

The cause was tried to a jury. After the jury had been instructed and had been in deliberation for some time, the jurors returned into the courtroom and, in the presence of the clerk, court reporter, the parties and their attorneys, the following occurred:

"THE COURT: I understand you, Ladies and Gentlemen, have a question. * * *

"FOREMAN: The jury is confused as to the 3rd party, whether the father could be considered negligent or not in the 3rd party.

"THE COURT: Well, the answer to that question, of course, is yes. He is a 3rd party and the instructions that refer to a 3rd party could refer to him.

"FOREMAN: And he could be considered as negligent, is that right?

"THE COURT: Yes. I might say, however, that he, of course, has not been sued, so there can be no recovery against him. You have your choice of suing who you want to sue, and he was not sued. You are under no obligation to sue everybody you feel is negligent. You can sue those who you want to sue. He has not been sued but it could be the finding of yours that he was negligent, and he is a 3rd party within the meaning of those instructions which refer to 3rd parties or other persons. Are there any other questions?

"THE FOREMAN: I believe that is clear, Your Honor."

Thereafter, following further deliberation, the jury returned its verdict in favor of the defendants; and judgment was entered thereon for the defendants and against the plaintiff.

Plaintiff's subsequent motion for a new trial was denied and plaintiff brought this appeal from the judgment and from the order denying his motion for a new trial. The errors assigned as grounds for the new trial are also assigned as errors on this appeal from the judgment.

Instruction No. 29 is as follows:

"If you find from your consideration of all the evidence that the defendant was negligent in one of the ways which I have mentioned, as charged by the plaintiff, and that his negligence was a proximate cause of injury to the plaintiff and you further find that the acts of a third person also was a proximate cause of injury to the plaintiff, then the acts of the third party are not a defense to the defendant against the claim of the plaintiff unless you find that the proximate cause of injury to the plaintiff was in fact the negligence of the third party and that negligence of the defendant did not proximately cause or contribute to cause the injury of the plaintiff.

"Before some other proximate cause will relieve a negligent party whose negligence is a proximate cause of an accident it must be an efficient intervening cause, a new and independent force which breaks the causal connection between the original wrong and the injury."

Plaintiff contends the instruction was erroneous in that it was ambiguous and confusing and particularly that it did not inform the jury as to whom might be considered a third party within the meaning of the instruction, and that it instructed the jury upon the law of intervening cause, which was inapplicable because no intervening cause appeared from the evidence.

Plaintiff also assigns as error the oral instruction given to the jurors when they returned to the courtroom, as hereinabove set out. Plaintiff contends such instruction was erroneous on the grounds; first, that it was oral, and second, that it was an erroneous statement of law.

However, the oral instruction effectively removed the uncertainty from the minds of the jurors as to whom they might consider as a negligent third party, thus remedying the defect complained of in instruction No. 29.

Plaintiff's contention that there was no intervening proximate cause revealed by the evidence is not well taken. Assuming there was negligence on the part of the driver of the truck, it is obvious from the facts that Milton Meyer, the driver of the automobile, could be found negligent also. The jury justifiably may have found that the speed at which he undertook to pass the Yekel car and the truck, without first determining whether such passing could be safely undertaken, was negligent. Such negligence on the part of Meyer was independent of any negligence on the part of Mayberry. The two were not acting in concert. The jury could have considered such negligence on the part of Meyer as an efficient intervening cause, which constituted the proximate cause of the collision. Such finding by the jury would shield defendants from liability. In Smith v. Sharp, 82 Idaho 420, 427, 354 P.2d 172, 175 (1960), we quoted the rule of superseding proximate cause from the Restatement of Torts, § 440, as follows:

" 'A superseding cause is an act of third person or other force which by its intervention prevents the actor [Mayberry] from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about.

" '*Comment:*

\* \* \* \* \* \*

" 'b. A superseding cause relieves the actor [Mayberry] from liability, irrespective of whether his antecedent negligence was or was not a substantial factor in bringing about the harm. Therefore, if in looking back from the harm and tracing the sequence of events by which it was produced, it is found that a superseding cause has operated, there is no need of determining whether the actor's antecedent conduct was or was not a substantial factor in bringing about the harm.' "

2 Restatement of Torts 2d §§ 440, 441, 442, 442A, 442B, and 447.

Mayberry testified that he saw, through his rearview mirror, the Yekel station wagon behind him, but that he did not see the fast-moving Meyer car and was not aware of its presence until he heard the squeal from its skidding tires. He was moving slowly and his signal lights were properly operating. If the jury believed and accepted that state of facts, and also that the Meyer car approached at an unreasonable rate of speed, then the jury could also find that Mayberry's failure to anticipate the negligent conduct on the part of Meyer was excusable, and that Meyer's negligence thus became the superseding proximate cause of plaintiff's injury. Dewey v. Keller, 86 Idaho 506, 388 P.2d 988 (1964); Bruno v. Gunnisen Contractors, Inc., 176 Neb. 462, 126 N.W.2d 477 (1964); Tandeski v. Barnard, 265 Minn. 339, 121 N.W.2d 708 (1963); Robinson v. Butler, 226 Minn. 491, 33 N.W.2d 821, 4 A.L.R.2d 143 (1948); Sanders Trucking Co. v. King, 313 Ky. 29, 230 S.W.2d 87 (1950); Meyette v. Canadian Pac. Ry. Co., 110 Vt. 345, 6 A.2d 33 (1939); Griffith Freight Lines v. Benson, 234 Ala. 613, 176 So. 370 (1937). Cf. Walenta v. Mark Means Co., 87 Idaho 543, 394 P.2d 329 (1964).

Plaintiff contends that oral instructions are not permitted by our Rules of Civil Procedure and that the court committed reversible error in giving the oral instruction set out herein, citing IRCP Rule 51. The portion of the rule relied upon is as follows:

"The court shall read to the jury the said written instructions before the arguments are commenced. After the jury have retired for deliberation, if they desire to be informed of any point of law arising in the cause, the instructions heretofore given may be reread in whole or part."

As plaintiff contends, this rule implies that instructions should be written. However, we regard the rule in that respect as directory and not mandatory. We do not find the action of the court to be reversibly erroneous. The purpose of reducing in-

structions to writing in order to avoid uncertainty as to what instruction the jury has been given, was served in this case by the court reporter's recording and transcribing the actual language of the court. Moreover, our statutory rules contemplate that with the consent of the parties the court may charge the jury orally, the same to be taken and transcribed by the reporter and filed in the action. I.C. § R10–206. The same section also contemplates that upon objection of either party to the giving of written instructions the court may charge the jury orally and in the manner provided by I.C. §§ R10–207 and R10–208. Idaho Code § R10–213 provides for instructions after the jury has retired for deliberation in the manner in which the oral instruction was given in this case. The rereading, in whole or in part, of instructions previously given, would not further inform the jury on a point of law, nor clarify in their minds an uncertain instruction.

To justify a reversal in such case, the complaining party must have been prejudiced by the action of the court. I.C. § 5–907; IRCP Rule 61; State v. Spencer, 74 Idaho 173, 258 P.2d 1147 (1953); Dedman v. Oregon Shortline R.R. Co., 57 Idaho 160, 63 P.2d 667 (1936); 115 A.L.R. Anno. § III, 1334; Young v. State, 357 P. 2d 562, 567 (Okl.Cr.App.1960); Leggett v. State, 227 Ark. 393, 299 S.W.2d 59, 61, 62 (1957).

Plaintiff also contends the oral instruction was erroneous in implying that plaintiff could have brought action against his father, the driver of the car, and cites authority for the proposition that an unemancipated minor cannot maintain an action against his parent on a cause arising out of simple negligence, to wit: DeLay v. DeLay, 54 Wash.2d 63, 337 P.2d 1057 (1959); Perkins v. Robertson, 140 Cal.App. 2d 536, 295 P.2d 972 (1956); 19 A.L.R.2d Anno. § 11, p. 442, 19 A.L.R.2d Later Case Service § 11, p. 37.

Assuming that to be the rule in this jurisdiction, we do not find reversible error in the observation made by the court in that regard. The statement of the court was not material or pertinent to any issue in the case; but it was supplemented by the observation that the father was not sued and, therefore, no verdict could be returned against him. The jury was also instructed that any recovery in the action was for the use and benefit of the minor and not his parent. It thus appears that no prejudice to plaintiff resulted from the implication that he could have sued his father.

Instruction No. 9, also assigned as error, was as follows:

"The negligence of a Father, if there be any, is not imputed to a minor child who is injured while a passenger in an automobile driven by the Father. Any relief allowed a minor is solely for his own benefit and does not accrue to his parent's benefit. One exception to the rule of lack of imputation as here set out would be if the minor had control or right of control over the vehicle's operations at the time of the accident."

Objection is made to the last sentence of the instruction on the ground that there was no evidence showing that plaintiff had any control or right of control over the operation of the automobile. The evidence showed that the boy was sitting on the extreme right-hand side of the front seat; that his mother occupied the middle of the seat and his father was on the left side of the seat driving the car. From this situation together with the boy's age, it was obvious to the jury that the boy could not have had control of or right to control the automobile. Although the portion of the instruction complained of was unnecessary, we do not find it reversibly erroneous.

Judgment affirmed.

Costs to respondents.

McFADDEN, C. J., and McQUADE, SMITH and SPEAR, JJ., concur.