## JEFFRIES v. SEABOARD AIR LINE RAILROAD CO.

(Filed November 12, 1901.)

1. DAMAGES—*Evidence—Admissibility—Earning Capacity.*

In an action against a railroad company for injuries to a child, evidence that the child had no property and no source of income, taken in connection with the proof of wages current in the locality, is competent on the question of damages:

2. EVIDENCE—*Opinion Evidence—Competency.*

In an action against a railroad company, it is not competent to ask the engineer whether there was anything not done that could have been done to save the child.

3. NEGLIGENCE—*Railroads—Reasonable Care.*

It is the duty of the engineer, in order to avoid injuring child on track, to check the train at the time when, in the exercise of reasonable care, he could have first seen the child.

ACTION by Carrie Jeffries, by her next friend, Leonora Jeffries, against the Seaboard Air Line Railroad Company, heard by Judge *A. L. Coble* and a jury, at April Term, 1901, of the Superior Court of FRANKLIN County. From a judgment for the plaintiff, the defendant appealed.

*F. S. Spruill,* and *B. B. Massenburg,* for the plaintiff.
*C. M. Cooke, W. H. Day, J. B. Batchelor,* and *Battle & Mordecai,* for the defendant.

CLARK, J. Carrie Jeffries, three years old, while straying upon defendant's track, was injured by its locomotive, causing the loss of her right arm at the shoulder. Some of the defendant's exceptions, taken out of abundant caution on the trial, were properly abandoned here, and we will only discuss those insisted on in the argument, though we have examined them all.

The first exception was to the admission of evidence that the child had no property and no source of income. This, standing alone, might have been irrelevant testimony, and the admission of such is no error, unless it is injurious to the party excepting. *Waggoner v. Ball,* 95 N. C., 323; *Deming v. Gainey, Ibid,* 528; *Patterson v. Wilson,* 101 N. C., 594. But the next question elicited the fact that a cook was worth in that section two to three dollars per month and board, and ten cents per day was allowed for board; that a woman field hand was worth 35 to 40 cents per day and board. The object and pertinency of the evidence were to show what this child, with no source of income and no means of education, would have been worth to herself later in life, if uninjured, in the humble vocations of cook or field hand, which are occupations within the probable reach of the illiterates of her sex. The defendant certainly has no cause to complain.

In *Railroad v. Shipley,* 31 Md., at page 374, the Court, holding that evidence was competent that plaintiff was the son of a laboring man and a mechanic, well says: "If, in fixing the amount of damages, the jury are to estimate to what extent the injury has disabled the plaintiff from engaging in such mechanical or other laborious employments or pursuits, as but for the injury he would have been qualified for, we do not see why they should not be informed by evidence that his position and reasonable expectations in life were such as would render such pursuits probable and necessary for a livelihood." The Court goes on to say that if it had been attempted to use this evidence merely to show poverty and to appeal to the prejudices of the jury, exceptions should be made to any argument on that line, and a special instruction might also be asked confining the testimony to its legitimate purpose. Nothing of that kind appears in the present case, and the evidence was clearly competent for the purpose just stated.

Many other cases hold that evidence of the condition in life of the party injured may be shown as one of the factors in determining how much money loss has been caused him by the injury. *Winters v. Railroad,* 39 Mo., 468; *Railroad v. Martin,* 41 Mich., 671; *Express Co. v. Nichols,* 33 N. J. L., 437, 97 Am. Dec., 722, in which the Court says: "The plaintiff was an architect—a business depending on his personal services as much as that of a common laborer, a clerk or a mechanic, and his emoluments were the result of his own earnings. By reason of the injuries he received, he was for a time incapacitated from pursuing his occupation, and sustained damages by reason thereof. These damages resulted proximately from the wrongful act of the defendant's servants, and obviously should be included in the compensation to be awarded to him. To what extent he had sustained pecuniary injury in that respect must depend upon the nature and extent of his business; and the jury would not be in a condition to reach any correct conclusion on that subject, unless they had before them some evidence of the value of the services to himself."

In *Stafford v. Oskaloosa,* 64 Iowa, 258, it was held that where a physician was disabled by an injury to earn a livelihood, it was competent to show his earning capacity in the practice of his profession.

In *Simonson v. Railroad,* 49 Iowa, 94, it was held competent to show that an unskilled laborer had no other source of income than his earnings as such.

In *Railroad v. Falvey,* 104 Ind., 409, it is said that the jury may consider as an element of damages "the professional occupation, if any, of the plaintiff, and her ability to earn money, and she will be entitled to recover for any permanent reduction of her power to earn money by reason of her injuries."

It is a truism that whether it is a professional man or

skilled laborer who is prevented by injury from pursuing his calling, that calling and his earnings thereby are matters to be put in evidence in awarding his compensation. The defendant has no ground to complain that here it is in evidence that the child, who as yet has no vocation, was in humble circumstances, and had not suffered any pecuniary injury by the loss of her arm other than the earnings which might have come to her later from manual labor.

Counsel for defendant say in their brief, "the child of Barabbas would be entitled to as much damages, the injuries being equal, as the child of Herod." This is true as to compensation for physical suffering. It would not be true as to compensation for loss of earning capacity as between two individuals earning different incomes, for in that aspect their injuries are not equal. When, however, by reason of immaturity neither has yet acquired a vocation, whether one with the means of obtaining an education has not suffered greater loss by being disabled to profit thereby, than one who has no expectations in life, except of earning a livelihood by manual labor, is a matter we need not discuss, for here the compensation asked is on the lowest possible basis, that of manual, unskilled labor.

The next exception is that the following question to the engineer was ruled out on plaintiff's objection: "After you saw the child, was anything not done that could have been done to save the child?" This, if a proper matter of proof, was to ask the witness to answer a question that the jury were to pass upon. This has been fully discussed by COOK, J., in *Raynor v. Railroad,* at this term, and needs no further citation of authority. The question, however, is further objectionable, for the proof should be directed to the inquiry whether the injury could have been avoided by reasonable care on the part of the defendant after the engineer, with a proper outlook, *should have seen the child..* This

view was expressed in the following instruction to the jury, to which the defendant also excepted: "It was the duty of the engineer to have made an effort to check the speed of his engine as soon as the train reached a point on the track when, by looking, he could have seen the child. It is not material in this case whether the engineer actually saw the child on the track or not. If, in the exercise of ordinary care, by looking ahead, he could have seen the child in time, without injury to his passengers, to have stopped the train before he ran over it, and failed to do so, the defendant company was negligent. Therefore, if the jury shall find as a fact from the evidence that the engineer, in the exercise of ordinary care, by looking ahead, could have seen the child, and, without injury to his passengers, stopped the train before he struck it, and that he failed to stop the train, thinking that the child would get off the track, or be taken off before he got to it, and so ran over it, the company would be negligent, and the jury should answer the first issue 'Yes.'" This instruction was fully warranted by an unbroken line of cases from *Pickett v. Railroad,* 117 N. C., 616, 30 L. R. A., 257, 53 Am. St. Rep., 611 down to the present term, and is based upon every consideration of humanity and due regard to the rights of common carriers by rail and those injured by the dangerous machines which they must necessarily use in their rapid conveyance of freight and passengers. Among the many cases are *Pharr v. Railroad,* 119 N. C., 751; *Fulp v. Railroad,* 120 N. C., 529, and many others cited in 'Munroe's Notes to Pickett's Case, and there are others later than the publication of these notes.

The defendant's counsel rest their exception upon an expression in the opinion in *Bottoms v. Railroad,* 114 N. C., 704, 25 L. R. A., 784, 41 Am. St. Rep., 799, which, in general terms, approved a charge of the Judge below containing the sentence that if the engineer was so occupied about his

engine that he did not see the helpless person on the track in time to avoid the injury, the defendant would not be liable. But that identical point was an issue and reviewed in *Arrowood v. Railroad,* 126 N. C., 629. In that case the Court said: "The duty of keeping a lookout is on the defendant. If it can keep a proper lookout by means of the engineer alone, well and good. If, for any reason, a proper lookout can not be kept without the aid of the fireman, he also should be used. If, by reason of their duties, either the fireman or the engineer, or both, are so hindered that a proper lookout can not be kept, then it is the duty of the defendant, at such places on its road, to have a third man employed for that indispensable duty. In *Pickett v. Railroad,* 117 N. C., 634, 30 L. R. A., 257, 53 Am. St. Rep., 611; *Lloyd v. Railroad,* 118 N. C., 1012, 54 Am. St. Rep., 764, and a long line of similar cases, it is held that it is the duty of the *defendant* to keep a proper lookout. It is not held anywhere that such lookout as the engineer may be incidentally able to give will relieve the company, if that lookout is not a proper lookout."

The request to instruct the jury to answer the first issue "No," was properly refused. There was ample evidence, if believed by the jury, that the train could have been stopped in time to have avoided the injury after the engineer, with ordinary care, could have seen the child on or in dangerous proximity to the track.

For the same reason it was not error to add the modification made in the second instruction asked by the defendant.

Affirmed.