JANE E. BANKS *vs*. MARGARET E. ADAMS

AND

ANDROSCOGGIN & KENNEBEC RAILWAY COMPANY.

JOHN BANKS *vs*. SAME.

EDITH M. ADAMS *vs*. SAME.

JOHN BANKS *vs*. SAME.

Androscoggin.     Opinion, November 13, 1937.

*Berman & Berman,* for plaintiffs.
*Fred H. Lancaster,*
*Skelton & Mahon,* for defendants.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

MANSER, J. These four cases, arising out of a collision between an electric street car and an automobile, were tried together and resulted in verdicts for the plaintiffs against the Street Rail-

way Company and verdicts in favor of the other defendant, Margaret E. Adams. The defendants were sued jointly upon the ground that the accident was occasioned by their concurrent negligence. The defendant Railway Company filed motions for a new trial upon the usual grounds. The plaintiffs filed motions asking that the verdicts rendered in favor of the defendant, Margaret E. Adams, be set aside There were no exceptions.

The plaintiffs were all passengers in the automobile driven by the defendant, Margaret E. Adams. The Court is called upon to determine whether upon examination and analysis of the entire record the several verdicts require its intervention.

The plaintiffs insist that it does, as against Margaret E. Adams. Even though a verdict has been rendered in their favor against the Railway Company and they maintain its integrity, yet if the verdict against the other defendant is erroneous, they are entitled to their remedy against her, although they can obtain but one indemnity. *Gregware* v. *Poliquin*, 135 Me., 139, 190 A., 811.

In the forenoon of February 2, 1936, a cold, clear rather windy day, Margaret E. Adams, driving a Ford sedan was conveying her mother, Edith M. Adams, her aunt, Jane E. Banks and her aunt's husband, John Banks, in the open country on the highway leading from Lewiston to Lisbon. This highway is paralleled along its westerly side and approximately eight feet from the edge of the macadam by the tracks of the defendant railway. The intended destination of the parties was the Webber house, so called, from which was to be held in the afternoon, funeral services for the paternal grandmother of Margaret Adams. The house was situated westerly of the highway, 108 feet distant therefrom and upon a rise of land. It was reached by a narrow, private driveway running practically at right angles with the highway and crossing the tracks of the Railway Company. The collision occurred on the driveway at its junction with the tracks. The issues involved are (1) due care on the part of each plaintiff as a passenger. (2) negligence of the defendant Railway Company as a proximate cause and (3) negligence of the defendant, Margaret E. Adams as a proximate cause.

On the first two issues the plaintiffs have the benefit of jury verdict. On the third, the plaintiffs have the burden of showing error.

We consider first the verdicts as to Margaret Adams. In epitome, she testified that she was entirely familiar with the vicinity; had lived in the Webber house; knew about the crossing and the driveway; was fully aware of the proximity of the car tracks and the frequency of the operation of street cars; was driving at a moderate speed; that as she approached the driveway she looked into the rear vision mirror of her car which enabled her to see the track for a good distance back; that she slowed up to allow a delivery truck to back out of the driveway and pass her going in the direction towards Lewiston; that she then operated her automobile so that it described an arc, and as she was about to leave the highway and enter the driveway, she was at right angles to the track, and less than 15 feet therefrom. The windows of the car were all clear. She had slowed down her car to what she described as practically a walking pace and had shifted gears to negotiate the slight rise up to and across the tracks. The window upon her side of the car was open. At this point she had clear vision up the tracks at least as far as the next house, which was located 624 feet away. Here she says she again looked and saw and heard nothing coming.

The only logical conclusion to be drawn from her testimony would seem to be that there was no electric car approaching. But there was. Before she had traversed less than the width of an ordinary highway, the electric car coming from the direction in which she had looked smashed into the rear of her automobile. It was a large winter type trolley car, nearly 50 feet in length, weighing over 22 tons and approaching on a slightly descending grade. If its speed were twice what any witness estimated, it must still have been in close proximity when she looked. The jury evidently accepted as proof of her due care the evidence that she looked and did not see; that she listened and did not hear.

The rule is definitely stated in *Gregware* v. *Poliquin,* supra:

"This Court has repeatedly called attention to the settled and salutary rule that an automobile driver is bound to use his eyes and to see seasonably that which is open and apparent, and govern himself suitably. Whenever it is the duty of a person to look for danger, mere looking will not suffice. One is

bound to see what is obviously apparent. If the failure of a motor vehicle operator to see that which by the exercise of reasonable care he should have seen is the proximate cause of an injury to another, he is liable in damages for his negligence." Citing *Clancey* v. *Cumberland County Power and Light Co.*, 128 Me., 274, 147 A., 157; *Callahan* v. *Bridges Sons*, 128 Me., 346, 147 A., 423; *Rouse* v. *Scott*, 132 Me., 22, 164 A., 872.

The defendant, Adams, was about to cross the right of way of the defendant Railway, and at right angles thereto. She was about to enter a private way, serving but one house; her car was under complete control; she could have stopped instantly. She neither saw nor heard the electric car, which was indubitably within sight and hearing. It was her duty to apprehend the obvious danger and it was within her power to avoid it.

In *Bramley* v. *Dilworth*, 274 Fed., 267, the court said:

"He, (the defendant) was not only required to look, but he must look in such an intelligent and careful manner as will enable him to see the things which a person in the exercise of ordinary care and caution, for his own safety and the safety of others, would have seen under like circumstances." See also *Pratt* v. *Kistler*, 233 P., 600.

There was testimony by others of conduct on the part of the defendant, Adams, calculated to show a failure to either look or listen and tending to establish clear actionable negligence in other respects, but this may be disregarded, as the jury had a right to rely upon her own version.

Her evidence corroborated by that of her mother, with all the inferences which the jury could justifiably draw from it, still spells negligence.

Even though negligence of the defendant, Adams, is established, yet it is incumbent upon the plaintiffs to prove that no want of due care contributed as a proximate cause of the injury. Each case must be governed by its own facts and circumstances. The plaintiffs were all passengers, and the negligence of the driver is not imputable to them. Analysis of the record discloses a clear distinction be-

tween the situation of Edith M. Adams and the other plaintiffs, John Banks and Jane E. Banks. The latter two were riding in the rear seat. Testimony justifies the conclusion of the jury that they were not aware of the immediate approach to the driveway. Mr. Banks knew of the proximity of the railway tracks and said he was looking ahead and saw no electric car in sight. None was coming from that direction. He had little opportunity to make observation in the other direction. So with Mrs. Banks, who was a passive passenger, unaccustomed to the risks of automobile travel and apprehensive of no danger.

On the other hand, Mrs. Adams, was fully aware of the risks to be anticipated at the time. Knowing well the location, observing closely all that her daughter was doing, herself seated at the right of the driver, her testimony was in effect that she was watchful. As the automobile made its turn to enter the driveway, she had even better opportunity than her daughter to see the approaching electric car, and warning from her might well have been in time to avert disaster.

"It is of 'apparent' danger which the passenger must give warning, not necessarily apparent to the individual but that which is or ought to be reasonably manifest to the ordinarily prudent person. As is said in *Minnich* v. *Transit Co.*, 267 Pa. St., 200, 18 A. L. R., 296, it is, 'when dangers which are either reasonably manifest or known to an invited guest confront the driver of a vehicle and the guest has an adequate and proper opportunity to control or influence the situation for safety, and sits by without warning or protest and permits himself to be driven carelessly to his injury' that his negligence will bar his recovery." *Peasley* v. *White*, 129 Me., 450, 152 A., 530, 531.

Her own negligence is clearly shown for the reasons indicated in the foregoing citation and already discussed with relation to her daughter.

As to motions presented by the Railway Company for new trials. While the facts were controverted, there was justifiable inference that the electric car had attained a high rate of speed, based principally upon the evidence that it was coasting on a down grade and

continued for a considerable distance beyond the scene of the accident, although all available means were used to bring it to a stop; that two other employees were standing with the motorman; that the highway was in clear view; that as before referred to, there was testimony showing a lessening of speed of the automobile as it approached the crossing to give opportunity for a delivery truck to back out of the driveway, and the automobile was then swung in an arc to make the turn. These occurrences were unnoticed, and while denied as actually happening, were within the realm of credibility. According to the motorman, he had seen the automobile pass the electric car. It was in the highway ahead of him. He knew he was about to cross a private way which entered that highway. The Court can not say that the care required under such circumstances, if exercised, would not have avoided the accident.

The damages assessed, while apparently large, are not beyond the reasonable computation of a jury. Physical injuries sustained, categorically listed, seem of a somewhat minor character. The testimony of the attending physician as to resultant effects is positive and not denied. This, coupled with the recital given by the plaintiffs, justifies the awards.

The Court gives due recognition to the rule that it may not usurp the proper functions of the jury; that there can be no substitution of judgment on questions of fact where reasonably fair minded men might differ, but it is still the duty of the Court to correct error on the part of the jury when such error is unmistakable. *Peasley* v. *White*, supra.

Following are the mandates:

> *Cases No.* 11, 12 *and* 14, *Jane E. Banks and the two cases of* John Banks *vs.* Margaret E. Adams *and* Androscoggin & Kennebec Railway Comany. *Motions of plaintiffs as to Margaret E. Adams, granted. Motions of defendant, Androscoggin & Kennebec Railway Company, overruled.*

> *Case No.* 13, Edith M. Adams *vs.* Margaret E. Adams *and* Androscoggin & Kennebec Railway Company. *Motion of plaintiff as to Margaret E. Adams, overruled. Motion of defendant, Androscoggin & Kennebec Railway Company, granted.*