LETA M. TIBBETTS *vs.* SHELDON T. HARBACH.

MERRITT G. TIBBETTS *vs.* SHELDON T. HARBACH.

MARLENE J. TIBBETTS,
BY FATHER AND NEXT FRIEND, MERRITT G. TIBBETTS

*vs.*

SHELDON T. HARBACH.

Waldo.     Opinion, April 15, 1938.

*Locke, Campbell & Reid,*
*Peter Mills,* for plaintiffs.
*William B. Mahoney,*
*John B. Thomes,* for defendant.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

STURGIS, J.    These actions of negligence arising out of an automobile accident were tried together at *nisi prius* and by agreement of the parties reported to the Law Court for final determination.

The state highway between Belfast and Augusta designated Route 3, at East Palermo, is intersected on its southerly side by the South Liberty road, so-called, which comes in at practically a right angle but does not cross the main highway. Route 3 is a black road eighteen feet wide with gravel shoulders which, some little distance west of East Palermo, crosses an iron bridge, turns rather sharply to the left, rises in an upgrade for several hundred feet until it reaches the South Liberty road, and then as it continues on is practically level. The brow of this hill obstructs the view ahead of travellers from either direction, and those coming from the east can not see traffic coming up the opposite grade until they draw near the intersection. The South Liberty road as it joins Route 3 broadens out into a wide mouth which is all gravel surfaced but is worn by travel into two forks or roads curving to the east and west, the outer limit of the west fork being marked by white posts and that of the east fork extending to the terrace of the lawn of an abutting owner. Each fork is wide enough for two vehicles to conveniently and safely travel abreast. At the time of this accident, the triangle formed by the diverging roads was clearly apparent and its bounds well defined. The gravel on its sides had been rolled into ridges eight to twelve inches high in places and the ruts there formed and on the opposite inside of the curves were well worn. The evidence tends to show that public travel through this intersection seldom if ever passed over the triangle.

The undisputed evidence in these cases is that at about half past

five in the afternoon of September 1, 1936, Mrs. Leta M. Tibbetts, accompanied by her four-year-old daughter Marlene J. Tibbetts, drove her husband's Ford automobile along the right-hand lane of Route 3 from the direction of Belfast and, approaching the East Palermo intersection into which she intended to enter, slowed her car down to about ten miles an hour, extended her hand out of the window signalling for a left turn, and seeing no car approaching in any direction swung diagonally across the white line which marked the center of the main highway at that point and attempted to drive off Route 3 into the east fork of the South Liberty road. Her statement is, and it appears to be entitled to credence, that having driven beyond the medial line of the east fork which she was about to enter, and having crossed the entire left lane of the black road so that the front wheels of her automobile were out on the gravel shoulder, suddenly seeing the defendant coming at a high rate of speed up Route 3 over the brow of the hill and directly towards her, she drove ahead less than a car length and, realizing that a collision was imminent, dropped the steering wheel and clasped the child in her arms. The weight of the evidence indicates that her car was in the east fork of the South Liberty road and its front end about nine feet from the macadam when it was struck on its right front side and driven back along the shoulder of Route 3 at least twenty-eight feet. Mrs. Tibbetts was grievously injured about the head and face, suffering a hemorrhage of the left eye, deep and extended lacerations of the chin, broken jaw bones and displaced teeth, and multiple minor cuts and abrasions. Her infant daughter was bruised more or less and shaken up but not permanently injured. Her husband's automobile was badly damaged.

The defendant Sheldon T. Harbach, a young clergyman residing in Detroit but vacationing at his former home in Barrington, Rhode Island, was driving his mother Floy L. Harbach through Maine and down to Ellsworth. He testifies that as he crossed the iron bridge on Route 3 below the East Palermo hill, he was driving his Chevrolet at a speed of about forty-five miles an hour, going up the grade accelerated his car so as to hold that speed, and as he reached a point where he could see over the brow noticed the Tibbetts car, then in the middle of the highway, slowly approaching from the opposite direction and one hundred and fifty feet or more

away. He admits that, although he immediately saw that the oncoming car was turning diagonally across the highway to the left and directly across his path, he neither applied his brakes nor turned into the unobstructed lane to the left, but bearing to the right with his car partly on the shoulder of the black road drove straight ahead at about the same speed of forty-five miles an hour, only turning sharply to the right as the automobiles came together. He testifies that he did not know of or observe the intersection ahead of him and admits that he did not think to put his brakes on. His mother, who was riding with him, confirms his admission that when the oncoming car was first seen, or immediately thereafter, it was "diagonally across the middle of the road," recalls that her son bore to the right, but has no other knowledge as to his operation of the automobile or the facts attending the collision. She did not notice the intersecting road.

Giving due weight to all facts proved in his defense, the evidence leaves little or no room for doubt that had the defendant, after seeing the plaintiffs' approaching automobile obviously turning to the left across the road, kept a proper lookout and taken the movements of the car into consideration, opportunity for him to have avoided the accident would have been ample. If he had thought to apply his brakes and slow down his car, which he admits he did not, or had swung to the left and to the rear of the oncoming automobile and allowed it to pass ahead of him, it is clear that the collision would not have occurred. "His impulsive act in attempting to drive his (car) in front of the automobile, was without relation to the proper theory and practice of the control of motor vehicles in like situations." *Eaton* v. *Ambrose*, 133 Me., 458, 180 A., 363, 365. Nor does the defendant's ignorance of the existence of the intersection excuse his conduct. Photographic exhibits in the cases show that the mouth of the intersection is plainly visible to traffic approaching from the west and the turn into it from that direction, although not marked by printed signs, is clearly indicated by a curving line of white posts. An automobile driver is bound to use his eyes, and to see seasonably that which is open and apparent and govern himself suitably. *Callahan* v. *Bridges Sons*, 128 Me., 346, 147 A., 423; *Banks* v. *Adams et al.*, 135 Me., 270, 195 A., 206. In no event, driving over a strange highway without knowledge of the

intersecting roads, is he justified in driving as if none existed. *Dansky* v. *Kotimaki*, 125 Me., 72, 75, 130 A., 871.

The controlling issue in these cases, however, is whether the plaintiff Leta M. Tibbetts was guilty of contributory negligence which is imputable to her infant daughter and her husband barring them and her from recovery. She is undoubtedly bound by her own acts and omissions, and if she is guilty of negligence proximately contributing to this accident, it is imputed to her child who was riding with her and obviously incapable of exercising care for its own safety. *Gravel* v. *LeBlanc*, 131 Me., 325, 162 A., 789; *Hasty* v. *Power Company*, 125 Me., 229, 132 A., 521; *Morgan* v. *Aroostook Valley R. R. Co.*, 115 Me., 171, 98 A., 628. So, too, the law imputes her contributory negligence, if there was such, to her husband, the plaintiff Merritt G. Tibbetts, in his action to recover for medical and hospital bills incurred in his wife's behalf and for the loss of her consortium. If she was not free from negligence contributing proximately to her injuries, he can here have no recovery for these items of damage. *Gile* v. *Gas & Electric Co.*, 132 Me., 168, 168 A., 553. As to the damages to his automobile, it is well settled that, if the wife is using her husband's car by his express or implied permission for her own purpose and as his bailee, he may recover against a third person negligently damaging the car, regardless of the contributory negligence of his wife. In such a case, the contributory negligence of the bailee is not imputed to the bailor. *Robinson* v. *Warren*, 129 Me., 172, 151 A., 10; *Bedell* v. *Railway Co.*, 133 Me., 268, 177 A., 237; 4 Blashfield Encyc. of Automobile Law, Sec. 2862. The rule is otherwise, however, if it may be found in these cases that Leta M. Tibbetts at the time of the accident was operating the automobile as the agent of her husband. It is a universal rule that the contributory negligence of an agent or servant acting within the scope of his employment is imputed to the principal or master. *Dansky* v. *Kotimaki*, supra; *Yarnold* v. *Bowers*, 186 Mass., 396, 71 N. E., 799; *Kennedy* v. *Alton, etc. Tract. Co.*, 180 Ill. A., 146; 45 Corpus Juris 1025 and cases cited.

The defendant first contends that the plaintiff Leta M. Tibbetts was guilty of contributory negligence by reason of her disobedience of the rule of the road prohibiting cutting corners at road intersections. The statutory regulation, R. S., Chap. 29, Sec. 74, pro-

vides that the driver of a vehicle on the public ways in this state, when intending to turn to the left at an intersection

"shall approach such intersection in the lane for traffic to the right of and nearest to the center line of the way, and in turning shall pass beyond the center of the intersection, passing as closely as practicable to the right thereof before turning such vehicle to the left.

"For the purpose of this section the center of the intersection shall mean the meeting point of the medial lines of the ways intersecting one another."

Proof of violation of this rule of the road is prima facie evidence of negligence, but there are many situations which may overcome and dispel the presumption which arises. In the last analysis, the violation is merely evidence to be considered with all other attending facts in determining whether the disobedient driver exercised due care in the operation of his vehicle under the circumstances. *Nadeau* v. *Perkins,* 135 Me., 215, 193 A., 877; *Field* v. *Webber,* 132 Me., 236, 169 A., 732; *Rouse* v. *Scott,* 132 Me., 22, 164 A., 872; *Bolduc* v. *Garcelon,* 127 Me., 482, 144 A., 395; *Dansky* v. *Kotimaki,* supra. Regardless of the nature and extent of the violation, however, causal connection between it and the accident must be established. Unless it was a contributing proximate cause, evidence of its commission is of no probative value and must be disregarded. *Elliott* v. *Montgomery,* 135 Me., 372, 197 A., 322; *Nadeau* v. *Perkins,* supra; *Field* v. *Webber,* supra; *Neal* v. *Rendall,* 98 Me., 69, 56 A., 209; 4 Blashfield Encyc. of Automobile Law, Sec. 2591.

The application of the highway intersection rule to the facts in these cases raises a question which is as yet undecided in this state. The South Liberty road, as stated, at its intersection with the state highway divides into two forks with a triangle between. The medial line of the main road passes through the apex of the triangle and the middle of its base, and extended finds its meeting point with the medial line of the state highway some little distance westerly from the point where the plaintiff Leta M. Tibbetts turned her car to the left. She, however, passed well beyond the medial line of the east fork of the South Liberty road before she turned from the right lane and across the center line of the state highway and continued

on into the intersection. As forcefully as counsel for the defendant presses his contention that the intersection of the medial line of the main South Liberty road and that of the state highway marked the point where the left turn should have been made, his opponent for the plaintiffs argues that a reasonable and sound construction of the statute in such a situation allowed a left turn around the center line of the east fork as here made. The constructions put upon similar highway intersection regulations by other courts are submitted by counsel on the briefs and indicate the trend of judicial opinion of the proper application of such rules at forked intersections.

In *Day* v. *Pauly*, 186 Wis., 189, 202 N. W., 363, relied upon by the defense, there was a Y entrance from an intersecting street into a main thoroughfare, all concrete and not constructed as or by user developed into a definite two-way entrance. On such facts, it was held that a driver cutting the corner and not passing to the right of the intersection in violation of a rule of the road was presumed to be negligent and guilty of contributory negligence if his act was the proximate cause of the injury complained of.

But in *Weiberg* v. *Kellogg*, 188 Wis., 97, 205 N. W., 896, it appearing that the authorities in charge of public roads had acquiesced in the use of two diverging travelled tracks across an intersection and had practically abandoned the triangle formed between the tracks, it was held that such acquiescence might be deemed an abandonment of the triangle and the center of the intersection referred to in the rule of the road requiring travellers turning to the left to pass to the right thereof has reference to the medial line of each diverging travelled road. In distinguishing its earlier opinion in *Day* v. *Pauly*, supra, that court emphasizes the fact that in this case the triangle did not constitute the travelled or beaten track and was not maintained as such, but was apparently abandoned both by travellers and public authorities.

In *Karpeles* v. *Livery Company*, 198 Ala., 449, 73 So., 642, it was said that the object of an ordinance requiring travellers in turning to keep to the right or the left of an intersection as the case may be is to keep vehicles moving at all times as far as practicable with the current of travel. And it appearing that the defendant in making a left turn passed at a lawful rate of speed to the left of the

center of the intersection of the streets as laid out but to the right of the intersection of the streets as defined by their customary use, it was held that it could not be said that the driver by that course did no better serve the purpose and the rule of due care prescribed by the ordinance.

In *Falk* v. *Carlton*, 270 Mass., 213, 170 N. E., 51, the question raised here as to the application of this rule of the road at forking intersections came up for consideration. Extended citation from this opinion seems profitable:

"The accident occurred near the point in East Street in Sharon where it divides and, by one travelled way passing to the right and by another passing to the left of a triangular grass plot at the intersection, runs into Bay Street. The defendant turned from Bay Street into East Street by using the travelled way first met at his left. He did not drive on along the side of the triangle on Bay Street until he reached the further travelled path into East Street before making his turn. He used a method of turning from Bay Street commonly in use by travellers approaching East Street from the direction in which he was going. There were shrubs growing on the triangular plot and by the sides of the travelled paths of East Street.

"There was no error in instructing the jury that it was not negligence, as matter of law, for him to drive to the left of the grass plot as he did. There was no evidence that the plot formed part of East Street; *but, even if it did,* we think it could not be said that as matter of law he was required to pass a travelled way leading to the broad travelled part of East Street in order to go beyond the centre of the intersection of East and Bay Streets and then turn sharply to his left to enter by the further way. Whether his conduct was negligent depended upon the entire circumstances at the time, and was matter of fact for a jury. Such triangular junctions are not uncommon; and a traveller who wishes to enter from his left is not bound as matter of law to keep on to the further roadway. In many cases he may be ignorant that a second entrance exists.

G. L. c. 90, sec. 14, (see present amended form in St. 1925, c. 305) is not to be interpreted to require such action."

We are of opinion that the construction placed upon intersection regulations in these cases should be applied to R. S., Chap. 29, Sec. 74. "Triangular junctions aré not (more) uncommon" in Maine than elsewhere, and in the absence of express legislative mandate to the contrary, it seems proper to hold that if the constant and customary flow of travel with the acquiesence of public officers has established two well-defined diverging ways in and out of an intersection accompanied by a practical nonuser of the triangle between, the forking roads become separate ways and the statute must be interpreted accordingly. It can not be presumed that the legislature intended the anomalous, inconvenient and absurd consequence which would otherwise result. *Carrigan* v. *Stillwell*, 99 Me., 434, 437, 59 A., 683.

In the instant case, it is true that the triangle between the two ways in and out of the South Liberty road at the time of this accident was not grown up to grass or bushes, although there is evidence that at some prior time a thin growth of grass had sprung up. It was, however, well defined with the gravel on its sides rolled up into shoulders eight to twelve inches high and had been practically abandoned for public travel. The grading and gravelling of the forks to their outer limits and a continued failure to level out the shoulders and fill the ruts at the sides of the triangle is some proof of official acquiesence in the customary user of the two ways. We are of opinion that the triangle was so defined and the diverging ways at its sides clearly established that the plaintiff Leta M. Tibbetts, in these actions, was not required as a matter of law to pass beyond the medial line of the main South Liberty road before turning from the state highway. In determining whether she was guilty of negligence, her conduct in turning left beyond the medial line of the east fork of the road is merely a fact to be considered with all the other facts and circumstances incident to the collision.

As triers of fact, the members of this Court do not think that the plaintiff Leta M. Tibbetts can be charged on this record with contributory negligence. As already stated, she slowed down her car, properly signalled her intention to turn, looked to the front and to

the rear for approaching traffic, and with apparently a clear road, started the turn, all with due regard for the meeting point of the medial lines of the highway and the intersecting fork. The defendant's automobile came into view from below the brow of the hill suddenly and at high speed and, as already pointed out, its operation thereafter made a collision inevitable and, as far as Leta M. Tibbetts was concerned, unavoidable. It is not at all clear that her impulsive act in taking her hands from the wheel and clasping her infant child to her in any way changed the situation. Her act must be viewed as an attempt to protect her infant daughter from the jeopardy in which it was placed by the oncoming automobile. The law will not charge this mother with negligence in dropping the steering wheel of her automobile in the emergency which here arose. *Hatch* v. *Globe Laundry Co.*, 132 Me., 379, 171 A., 387.

The plaintiffs are severally entitled to compensation for the injuries and losses they have suffered through the defendant's negligence. Considered out of order, Merritt G. Tibbetts shows items of expense, including the physician's and hospital charges for his wife's care and treatment, as also the estimated cost of further necessary dental surgery. He includes moneys paid for household services while his wife was incapacitated and incidental miscellaneous disbursements. The damage to his automobile claimed is based on the repair bill which seems to be reasonable. Taking all these items into consideration, together with the loss of his wife's services and consortium, we find that an award of $1356.58 will fairly compensate him for his damages. An allowance of $100.00 to the child Marlene J. Tibbetts appears on the record to be just compensation.

We are convinced, however, that there is insufficient evidence in the report to enable this Court to justly assess the damages which the plaintiff Leta M. Tibbetts is entitled to recover in her action. The evidence tends to support her claim that she is permanently disfigured by scars and in her facial contour and expression, but this is not portrayed by photographic exhibits nor can it be accurately visualized and weighed from the testimony of those who have observed her condition. So important an element of damage should be passed upon by a jury. Here, the case can only be re-

manded for assessment of damages and for the entry of judgment for the plaintiff Leta M. Tibbetts for the amount thereof.

In *Leta M. Tibbetts* v. *Sheldon T. Harbach,* the case is remanded for the assessment of damages and the entry of:

> *Judgment for the plaintiff for*
> *damages as assessed.*

In *Merritt G. Tibbetts* v. *Sheldon T. Harbach,* the case is remanded for the entry of:

> *Judgment for the plaintiff for*
> $1356.58.

In *Marlene J. Tibbetts, by next friend* v. *Sheldon T. Harbach,* the case is remanded for the entry of:

> *Judgment for the plaintiff for*
> $100.00.