HARRY KIMBALL
*vs.*
CECILE BRETON, EX'X ESTATE OF JOSEPH H. BRETON

MARGARET KIMBALL
*vs.*
CECILE BRETON, EX'X ESTATE OF JOSEPH H. BRETON

Androscoggin.   Opinion, January 20, 1958.

*John Platz,* for plaintiff.

*Frank W. Linnell,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, BELIVEAU, TAPLEY, SULLIVAN, DUBORD, JJ.

SULLIVAN, J.   These companion cases arise upon exceptions by the defendant to the denial by the presiding justice of her motions for directed verdicts, made at the close of the evidence. The jury rendered verdicts for both plaintiffs.

In one instance, the plaintiff and wife sues the defendant for personal injuries received by her and ascribed to the defendant's negligence. In the other, the husband seeks to recover damages from the defendant for losses consequential to him from a tort to his wife.

The plaintiffs pleaded in gist that the defendant owned and controlled a three story tenement house occupied by more than two families; that the plaintiffs were tenants of the defendant there, on the second floor; that the defendant owed a duty, because of the Revised Statutes of Maine (1954), Chapter 97, Section 49, to supply the second story of the building with more than one way of egress by stairways on the inside or fire escapes on the outside of the house but that she negligently failed to comply with the law; that a fire occurred on the second story, which compelled the plaintiff-wife to seek escape for herself and her children; that due to the want of the required exits the plaintiff-wife was constrained in the emergency to break a window by the use of her arm, thus injuring herself and derivatively

causing loss to the plaintiff-husband; that both plaintiffs throughout the entire episode observed due care.

The plea of the defendant was a general denial.

The province of this court in these actions as they have evolved is to decide if the verdicts are legally assailable.

> "As is well settled in this jurisdiction, a motion by the defendant for a directed verdict is equivalent to a demurrer to the evidence. Exceptions raise the question, not whether there is sufficient evidence to take the case to the jury, but whether upon all the evidence as it appears in the record a verdict for the plaintiff could be permitted to stand. Dyer V. Power & Light Company, 119 Me., 224, 110 A., 357. See also Mills V. Richardson, 126 Me., 244, 246, 137 A., 689."

*Ward* v. *Power & Light Co.*, 134 Me. 430, 431.

> "It is well settled that a verdict should not be ordered for the defendant by the Trial Court when, taking the most favorable view of the plaintiff's evidence, including every justifiable inference, different conclusions may be fairly drawn from the evidence by different minds. Collins V. Wellman, 129 Me., 263, 151 A. 422; Young V. Chandler, 102 Me., 251, 66 A., 539."

*Howe* v. *Houde*, 137 Me. 119.

> "A verdict should not be ordered by the trial court when, giving the party having the burden of proof the most favorable view of his facts and of every justifiable inference, different conclusions may fairly be drawn from the evidence by different minds. Young V. Chandler, 102 Me., 251."

*Collins* v. *Wellman*, 129 Me. 263.

> "It is firmly established in this State, that the Trial Court should direct a verdict for either party entitled to it, if the evidence raises a pure question of law, or if the evidence is such that reasonable minds would draw but one conclusion therefrom.

If different inferences of fact may be drawn from the evidence, or if there is any substantial conflict relating to a material issue, a verdict should not be directed. It must be apparent that a contrary verdict could not be sustained."

*Giguere* v. *Morrisette,* 142 Me. 95, 101.

For the defendant, then, to avail by her motion it must be discernible from the evidence with every justifiable inference—considered most favorably to the plaintiffs that reasonable persons could only conclude that the injuries and losses of the plaintiffs here were the result of the contributory negligence of the plaintiff-wife or were not caused by negligence of the defendant.

The cause of the plaintiffs is dependent upon the proven exercise of reasonable care by the plaintiff-wife.

*Tibbetts* v. *Harbach,* 135 Me. 397, 402.

The plaintiffs complained that the defendant negligently disobeyed the mandates of R. S. (1954) Chap. 97, § 49. That statute in its relevance reads as follows:

"Each story above the first story of a building used as a - - - tenement house occupied by more than 2 families - - - shall be provided with more than one way of egress, by stairways on the inside or fire escapes on the outside of such building. Such stairways and fire escapes shall be so constructed, in such number, or such size and in such location as to give reasonably safe, adequate and convenient means of exit, in view of the number of persons who may need to use such stairway or fire escape, shall at all times be kept free from obstruction and shall be accessible from each room in each story above the first story."

If the failure of the defendant to perform a duty imposed upon her by this statute, for the benefit of her tenants in her building, was the proximate cause of injury or loss to those tenants and if the injury or loss was the natural and

ordinary consequence of such failure upon the part of the defendant, then it is, at least, evidence of actionable negligence upon her part to be submitted to the jury. *Carrigan v. Stillwell*, 97 Me. 247, 54 A. 389, 61 L. R. A. 163.

It is conceded in argument by all of the parties to these actions that the question of whether the building of the defendant conformed with the foregoing statute was a matter for jury determination.

The issues to be determined are whether the jury verdicts may stand, whether there was a veritable question for the jury as to the due care of the plaintiff-wife, negligence of the defendant placing the plaintiff-wife in imminent peril and injuries to the plaintiff-wife as a proximate result of the defendant's negligence.

The record would justify a finding by the jury of these, narrated facts.

The plaintiffs were tenants of the defendant upon the second floor of a two and one half story, frame building in the overall possession and control of the defendant. There were four tenements, all tenanted, two on the first floor and two on the second. Within the building there was no stairway leading from the first story to the second. The only, outside means of ingress and egress to and from the second floor were two flights of stairs in the rear which met upon a single, sheltered landing at the back of the second story rents. Each rent was served respectively by a door leading within from the common landing. The two doors were separated by a partition, for a distance of twelve to eighteen inches. The partition was of wooden frame covered with sheetrock. Each door opened upon a separate shed to be traversed incident to entering or leaving the respective tenement. Much of the interior was wood but there is no evidence as to the material of the building as a whole. Above the second story there was no tenement.

Each upper rent shared about one half of the second floor area. The nondescript disposition of the rooms as delineated upon the plan in evidence would dictate the inference that the second floor was formerly a single, living unit later adapted to separated and dual occupancy. Provided doors encountered were not locked, one could proceed inside through one of the two, outside doors, advance by a somewhat meandering route through each second floor rent and return outside through the other, outermost door. Sometimes the doors of the tenements were kept locked by the occupants.

A feature of the plaintiffs' apartment was a porch enclosed with glass. To reach the essential, living quarters of the Kimballs it was necessary to pass through their shed and this porch.

The plaintiff-wife was twenty-one years of age. The plaintiffs had occupied their rent for three weeks, with their two, infant daughters, one three months old and the other eighteen months old. A Mr. Pennell, his wife and children occupied the adjoining rent. The plaintiff-husband was absent from home at his occupation. At 7:30 in the morning the wife, clad in nightdress and housecoat, was in the kitchen with her babies. The older child was in a highchair by the window overlooking the street; the younger lay in a crib near the window looking upon the porch. The mother who had finished bathing the latter and was preparing to feed her glanced out of the window to the porch where the milk was. She testified: "- - - all I could see was smoke. - - - Smoke; just all smoke." She went at once into the kitchen of the Pennells and told Mrs. Pennell of the smoke. Mrs. Kimball through the glass in the kitchen door of the Pennells then noticed flames in the Pennell shed. The fire seemed to her to embrace, amongst others, the area about the common partition between the Kimball and Pennell sheds. She returned to her own kitchen to find that room

filled with smoke and her babies choking and crying for air. She, too, was choking. She rushed to a window and drove her fist and arm through a glass pane. She called to two nuns upon the street. As the nuns turned toward the house, Mr. Pennell came into the room. At his direction the mother and he each took a baby and went to the Pennell rent, through the burning shed and outdoors. Although her arm was severely lacerated Mrs. Kimball was not conscious of her injuries until they were called to her attention sometime after she had reached safety.

Considerable damage was done to the Pennell shed by the fire and some to that of the Kimballs. Both tenements suffered from smoke and heat. The partition between the two sheds was gutted.

The mother testifies that alone she was not capable of carrying her two babies out. She said that she did not leave through her own porch because it was filled with smoke. There was nothing to prevent her from raising the window, but the time element gave her concern as her answer reveals:

Q. "Well, you didn't have time

A. If you see a room full of smoke and babies are choking you wouldn't think about it; you would just think about getting them out."

Mrs. Kimball was excited. She did not open the door leading onto the porch to examine conditions there.

The extent of the injuries to the plaintiff-wife was the lacerations and their resultants.

As heretofore observed the defendant has acknowledged that the question of a violation by the defendant of R. S. (1954) Chap. 97, § 49 was a proper subject for jury consideration. From the record there can be no doubt that a jury would have been justified in finding such a violation

and that it constituted negligence. The statute was patently one enacted for public safety.

> "- - - - If such violation is admitted, or proven by the evidence, it is prima facie evidence of negligence, as it is sometimes said, and as otherwise expressed, raises a presumption of negligence. While not conclusive, the defendant must overcome the presumption against him - - - -"

*Nadeau* v. *Perkins,* 135 Me. 215, 216.

> "- - - - Regardless of the nature and extent of the violation, however, casual connection between it and the accident must be established. Unless it was a contributing proximate cause, evidence of its commission is of no probative value and must be disregarded - - - -"

*Tibbetts* v. *Harbach,* 135 Me. 397, 403.

> "It is true that the 'issue of proximate cause is also one of fact, not of law, and is to be submitted to the jury under proper instructions unless the court can say with judicial certainty that the injury is or is not the natural and probable consequence of the act of which the complaint is made.' Nicholas V. Folsom, 119 Me., 176, 110 A. 68, 69, and cases there cited."

*Elliott* v. *Montgomery,* 135 Me. 372, 374.

From the evidence reviewed above a jury would have been further warranted in finding that a statutory infringement by the defendant was a contributing, proximate cause of an emergency which beset the plaintiff-wife. The disposition of the rooms and exits upon the second floor of the defendant's building, the fact that communicating and intercepting rooms were sometimes, for privacy or security, locked, the presence of a lone mother with two infants, of smoke and fire, of the choking and crying of the babies and human behavior responsive to such conditions as an integrated whole could all be fairly regarded as within "the

range of reasonable apprehension" and thus to have been foreseeable by the defendant.

> "In many cases courts have said that in determining what is the proximate cause, the true rule is that the injury must be the natural and probable consequence of the negligence complained of. But in the use of the word probable in this definition, it is not meant that the defendant did anticipate or by the exercise of ordinary prudence should have anticipated the precise form in which the injury actually resulted. If a person is injured by the negligence of another, he may recover for the natural and probable consequence of such negligence, although the injury, in the precise form in which it resulted, was not foreseen. It is sufficient that after the injury it appears to have been a natural and probable consequence of the defendant's negligence." (authorities cited)

> *Marsh* v. *Great Northern Paper Company*, 101 Me. 489, 502.

There is no implication and no proof in the record that the defendant was in any manner responsible for the fire. Her negligence has to be, if any, her prior, tortious violation of the safety statute. But that negligence could have been determined to be abiding, persistent and sufficient to sustain a full recovery by the plaintiffs.

> "The question whether or not negligence is a proximate cause of an injury is answered, not as a rule by determining that the act of a third person contributing to the result does or does not intervene, but rather by deciding whether the occurrence should have been foreseen or reasonably anticipated. The rule is thus stated by Judge Smith in the article previously referred to. 25 Harv. L. Rev., 113. 'By the decided weight of authority, A. would be liable if he foresaw, or ought to have foreseen, the commission of B.'s tort, and the resultant damage, as a not unlikely consequence of his earlier tort.' "

> *Hatch* v. *Globe Laundry Co.*, 132 Me. 379, 384.

> "- - - - The sole issues are whether the defendant was negligent, and, if so, whether his negligence was also a proximate cause. It is well established law that where two persons acting independently are negligent, one damaged thereby may recover from either. Hutchins V. Emery, 134 Me. 205, 183 A. 754 and cases cited therein. As that case declares: 'Each of two independent torts may be a substantial factor in the production of injury.' " *Robinson* v. *LeSage*, 145 Me. 300, 301.

A jury upon the evidence would have an objective basis for a finding that the plaintiff-wife, in the emergency created, comported herself as a reasonably prudent person in an ostensible crisis. Subjectively, to one in the predicament of Mrs. Kimball, there were many aspects of an entrapment of her and her babies. There was combustible material in the substance of the house. There was smoke in her porch. There was no knowing with assurance the extent or location of the fire or its tempo. When Mrs. Kimball went to the Pennell kitchen she observed flames in the Pennell shed. She returned to her own kitchen to find her own children already in throes. The infants were completely helpless to succour themselves. To carry both of them unharmed and at once through the burning structure to safety could have appeared hopeless or at least doubtful. Mrs. Kimball was susceptible to the fervent emotions of a mother and within generous bounds could be condoned and admired for them. She judged that she should not chance any waste motion. She broke a window with her arm, possibly to effect a vent, to secure assistance or to afford a means of escape. She called for help. With the aid of Mr. Pennell and by his direction she took her children out of danger. The fire in its aftermath proved formidable enough. Her injuries could be fairly deemed no fault of hers and such a resolution of probabilities could be within the sensible latitude of rational judgment.

> "- - - - It is well settled law that if a person is suddenly confronted by an unexpected peril, and must

choose on the instant between alternative hazards, it is not necessarily negligence if he chooses unwisely, not even if it appears that by choosing the other alternative he would have escaped danger entirely. Larrabee V. Sewall, 66 Maine, 376; Tosier V. Haverhill, etc., Ry. Co., 187 Mass. 179. A mere error in judgment is not of itself contributory negligence. Wolf Mfg. Co. V. Wilson, 152 Ill., 9; Hoyt V. R. R. Co., 6 N. Y. St., 7. An instinctive effort to escape a sudden impending danger, resulting from the negligence of another, does not relieve the latter from liability (cases cited). When one in imminent peril is compelled to choose instantly between two hazards, he is not guilty of contributory negligence if he exercises that degree of care that an ordinarily prudent person might exercise under the same circumstances. It is always a question of ordinary care. And ordinary care is a question for the jury. In this case the plaintiff was in a trap. - - - -"

*Borders* v. *Boston & Maine Railroad,* 115 Me. 207, 210.

"- - - - If she used that degree of care which an ordinarily prudent person would have used under the same circumstances and in the same emergency, - - - she was not guilty of negligence. - - - - -

"We are not concerned with consideration of what might have happened or might not have happened if parties had exercised extraordinary care, because such a degree of care is not required. - - - -"

*Byron* v. *O'Connor,* 130 Me. 90, 93.

"- - - - But 'hindsight' is not available to a person faced with an emergency with which he is suddenly confronted and which requires instantaneous action upon his part. He must act promptly, taking into consideration the circumstances as they may then present themselves."

*St. Johnsbury Trucking Co., Inc.* v. *Rollins,* 145 Me. 217, 222.

"- - - - Unless in extreme cases and where the facts are undisputed, which of two alternatives an intelligent and prudent person traveling the highway should select as a mode of escape from collision the law will not say, but will send to the jury the question whether the traveler acts with ordinary care. - - - -"

*Coombs* v. *Mackley*, 127 Me. 335, 339.

This court concludes that upon the issues of actionable negligence of the defendant and of reasonable care of the plaintiffs these actions presented questions appropriate for and necessitating jury judgment.

*Exceptions overruled.*