SAFIE BROTHERS COMPANY, INC. v. SEABOARD AIR LINE RAILROAD COMPANY, R. H. McDOUGALD, AND W. C. DIGGS.

(Filed 11 January 1963.)

**1. Railroads § 12—**

Employees of a railroad company in charge of the operation of its trains are under duty to keep a careful and continuous lookout along the track and will be held to the duty of seeing that which they should see in the exercise of ordinary care in the performance of this duty.

**2. Same—**

A ramp connecting plaintiff's building over a spur track was so constructed that it had to be raised several feet by electric hoists to provide clearance for defendant's engines, and this situation had existed for several years to defendant's knowledge. On a clear day while the ramp was down, defendant's brakeman flagged defendant's engine forward and the engineer drove the engine into the ramp, resulting in the damage in suit. *Held:* The members of defendant's crew should have seen that the ramp was not raised for clearance, and the railroad company is liable for their negligence in this respect under the doctrine of *respondeat superior.*

**3. Same—**

The contract between plaintiff and defendant railroad required plaintiff to provide 22 feet clearance above a spur track. Plaintiff constructed a ramp over the track which had to be raised several feet by electric hoists to provide the required clearance, and this condition had existed for a number of years to the railroad's knowledge. Defendant's train was driven against the ramp while it was in the lowered position. *Held:* Plaintiff cannot be held contributorily negligent as a matter of law in failing to maintain the required clearance at all times, since defendant knew of the condition and could have avoided damaging the ramp in the exercise of due diligence.

APPEAL by plaintiff from *Gambill, J.,* 12 February 1962 Term of RICHMOND.

Civil action to recover damages to a ramp connecting two buildings of plaintiff's manufacturing plant, allegedly caused by defendants' negligence.

From a judgment of compulsory nonsuit at the close of plaintiff's evidence, it appeals.

*Pittman, Pittman & Pittman by W. G. Pittman for plaintiff appellant.*

*Henry & Henry by Ozmer L. Henry for defendant appellees.*

PARKER, J.   Plaintiff offered evidence to this effect:

Plaintiff owns a large manufacturing plant in East Rockingham. Two of its buildings are about 45 feet apart. A ramp built of steel and lumber connected the two buildings for the purpose of facilitating the passage of persons, goods, and supplies. The corporate defendant operates an extensive railroad system, the main line of which passes by plaintiff's plant. A spur track branches off its main line, and passes onto plaintiff's premises and between plaintiff's two buildings connected by the ramp and under the ramp to serve the shipping needs of plaintiff, and before plaintiff of its predecessor in title. The ramp was across the railroad tracks in 1926, and has been since, and during that time engines and cars of the corporate defendant passed under it.

The first floor or story of the ramp had a passageway from the first floor of one building to the other, and was swung open manually to clear the spur track so an engine and cars of the corporate defendant could pass through. The second floor or story of the ramp connecting the No. 2 mill and the weave shed was remodeled after 1954, so that its floor could be raised 3½ or 4 feet by two electric hoists for an engine and cars of the corporate defendant to pass under it, and also lowered.

Prior to 7 December 1957 plaintiff had a supply clerk, who, when an engine and cars of the railroad came on the spur track, went out and operated the electric hoists to raise the second floor of the ramp for the railroad's engine and cars to pass under it. In December 1957 plaintiff closed its plant. After the closing of the mill, W. L. Adcock, superintendent and general manager of plaintiff's plant, showed the corporate defendant's trainmen how to operate the electric hoists. After December 1957 an engine and cars of the corporate defendant came on plaintiff's premises and under the ramp some weeks two or three times, sometimes once a week, and sometimes four times a week.

On 14 October 1960 an engine and cars of the corporate defendant, with R. H. McDougald as engineer and W. C. Diggs as flagman, entered the spur track and plaintiff's premises. The second floor of the ramp

was down—not raised. The engine operated by the engineer in attempting to pass under the ramp hit it and went through it about a foot causing it substantial damage. When the engine stopped, the steel, wood, and all the middle section of the part of the ramp, that raised for the engine and cars to pass under, was lying down on the front of the engine.

W. L. Adcock was called to the scene. It was about 11:00 a.m., and the weather was fair. He testified, without objection by defendants: "I had a conversation that morning with Mr. Diggs in the presence of Mr. McDougald. We were talking there in front of the engine and talking about what happened and he said he either stepped down off the train or stopped the train before he entered under the ramp. He said he thought it was up and he run in and just knocked it out. He flagged the Engineer on under the ramp. Mr. Diggs made the statement that he just thought it was raised up and it wasn't and that he just flagged the Engineer on under it and hit it and knocked it down, run on in."

Defendants elicited from W. L. Adcock on cross-examination evidence in substance: He read in the contract between plaintiff and the railroad company that in respect to structures over the track, the shipper will provide a vertical clearance of 22 feet above the top of the rail. When the platform of the second story of the ramp was down, there was not a 22-foot clearance, and the train could not go under it. A fence enclosed the mill. There was a gate at the spur track, and the contract provided the gate would be kept locked, and the railroad had a key and plaintiff had a key.

Plaintiff alleges in substance in its complaint that Diggs, the flagman, failed to exercise ordinary care to see that the second floor of the ramp was down, and, without exercising such ordinary care, negligently and carelessly flagged the engineer to go forward, that McDougald, the engineer, negligently drove his engine forward and through the ramp, when in the exercise of ordinary care he could have seen the second floor of the ramp was down, and that such negligence on the part of the corporate defendant's agents in the performance of their duties in the operation of the engine caused the engine to run into and hit the ramp, thereby proximately causing the damage complained of.

Defendants in their joint answer denied negligence, and conditionally pleaded as a bar to any recovery by plaintiff that it was guilty of negligence in not providing as required by contract a vertical clearance of 22 feet above the top of the rails of the track, thereby contributing proximately to the damage to its ramp.

In *Sawyer v. R.R.*, 145 N.C. 24, 58 S.E. 598, the Court said: "And it is well established that the employees of a railroad company engaged in operating its trains are required to keep a careful and continuous

outlook along the track, and the company is responsible for injuries resulting as the proximate consequences of their negligence in the performance of this duty. *Bullock v. R.R.,* 105 N.C. 180; *Deans v. R.R.,* 107 N.C. 686; *Pickett v. R.R.,* 117 N.C. 616."

In *Tippite v. R.R.,* 234 N.C. 641, 68 S.E. 2d 285, the Court said: "It was, therefore, the duty of the defendant to exercise reasonable care and diligence and to keep a proper and sufficient lookout along its tracks in front of these residences so as to avoid injuring the children of its tenants. On this question the Court has said: 'In *Pickett v. R.R.,* 117 N.C. 634; *Lloyd v. R.R.,* 118 N.C. 1012, and a long line of similar cases, it is held that it is the duty of the *defendant* to keep a proper lookout. It is not held anywhere that such lookout as the engineer may be incidentally able to give, will relieve the company, if that lookout is not a proper lookout.' *Arrowood v. R.R.,* 126 N.C. 629, 36 S.E. 151; *Jeffries v. R.R.,* 129 N.C. 236, 39 S.E. 836."

In *Wall v. Bain,* 222 N.C. 375, 23 S.E 2d 330, the Court said: "It is the duty of the driver of a motor vehicle not merely to *look,* but to *keep an outlook* in the direction of travel; and he is held to the duty of seeing what he ought to have seen."

In *Tibbetts v. Harbach,* 135 Me. 397, 198 A. 610, the Supreme Judicial Court of Maine tersely and accurately said: "An automobile driver is bound to use his eyes, and to see seasonably that which is open and apparent and govern himself suitably."

In our opinion, and we so hold, the duty required in this jurisdiction of the employees of a railroad company engaged in operating its trains to keep a careful and continuous lookout along the track holds these employees to the duty of seeing what in the exercise of ordinary care they ought to have seen, or, to use the language of the Maine Court, they are bound to use their eyes, and to see seasonably that which is open and apparent and govern themselves suitably.

Under the facts shown by plaintiff's evidence, which we accept as true in considering the motion for judgment of compulsory nonsuit, *Smith v. Rawlins,* 253 N.C. 67, 116 S.E. 2d 184, the defendants knew that the second floor of the ramp, when it was down, did not give 22 feet of clearance above the top of the rails of the spur track, and that since 1954 the second floor of the ramp had to be raised by electric hoists for an engine and cars of the railroad company to pass under it in safety, and that since 1954 the railroad company constantly had entered the spur track and gone under the ramp after its second floor was raised by electric hoists, and consequently, they could not assume, and act on the assumption, that the ramp was constructed so as to provide a 22-foot clearance above the rails of the spur track. *Weavil v. Myers,* 243 N.C. 386, 391, 90 S.E. 2d 733, 737. Considering plaintiff's

evidence in the light most favorable to it, and giving it the benefit of every reasonable inference to be drawn therefrom, it would permit a jury to find that McDougald and Diggs, engineer and flagman respectively of the corporate defendant's engine and cars, negligently failed to keep a proper lookout in operating its engine and cars on the spur track, that by reason of such negligence any ordinarily prudent man should have foreseen that consequences of a generally injurious nature should have been expected, that because of their negligent failure to keep a proper lookout they did not see in plain and open view on a fair day that the second floor of the ramp was down, that under those circumstances the engine and cars went ahead and hit and tore down the middle part of the second floor of the ramp, that such negligence on their part was the proximate cause of damage to the ramp, and that the railroad company is responsible for their actionable negligence under the doctrine of *respondeat superior.*

Defendants contend that even if they were negligent, which they deny, then plaintiff was guilty of contributory negligence barring any recovery by it on the ground that plaintiff in breach of its contract constructed and maintained its ramp without providing a 22-foot clearance above the rails of the spur track, and that this is shown by the testimony of plaintiff's witness Adcock on cross-examination, and by the pleadings.

*West Construction Co. v. R.R.*, 185 N.C. 43, 116 S.E. 3, is in point. The fourth headnote in our Reports states:

"Defendant railroad company put a spur track on plaintiff's land, to be used in supplying the latter's plant with material for manufacture, under a written agreement that plaintiff would not erect a building nearer than a certain distance from the defendant's track, etc. There was evidence tending to show that the defendant continued to operate on this spur track, and knew or should have known that a certain building was nearer the track than the contract permitted, with further evidence that by the exercise of proper care the defendant's employees could have avoided running a box car across the end of the rails, and injuring the building, for which damages are sought in the action: *Held,* it was for the jury to determine whether the negligence of the plaintiff was such contributory negligence as would bar his recovery, and defendant's motion as of nonsuit was properly overruled."

In the opinion the Court said: "Again, even if the plaintiff was negligent in constructing the buildings in breach of the contract, still if the defendant, with knowledge of the danger, could have avoided the injury by the exercise of ordinary care, and failed to use such care, the

negligence of the defendant and not that of the plaintiff would be deemed the proximate cause."

Even if plaintiff was negligent in constructing and maintaining the ramp without providing a 22-foot clearance above the rails of the spur track required, as defendants contend, by the contract, still according to plaintiff's evidence the defendants had full knowledge of such contended breach, and under the law as stated in the *West Construction Co.* case, defendants would not be entitled to a judgment of involuntary nonsuit on the ground of contributory negligence of plaintiff. Surely, plaintiff has not proved itself out of court on the ground of contributory negligence. *Lincoln v. R.R.*, 207 N.C. 787, 178 S.E. 601.

Plaintiff's evidence makes out a case for the jury as to all the defendants. The judgment of compulsory nonsuit below is

Reversed.